## Moore, et al. v. Williamson's Executor, et al.

(Decided February 8, 1921.)

### Appeal from Christian Circuit Court.

1. Mortgages—When Deed Will Operate as Mortgage.—Whatever the nature of a conveyance may purport to be on its face, if, in fact, it is only a security for money, it will operate as a mortgage and not a conditional sale.

2. Mortgages—When deed Will Operate as Mortgage.—Although the relationship of debtor and creditor does not exist between the grantor and the nominal grantees in a conveyance, if the instrument shows on its face a third party is the real grantee therein, and that it was made for his benefit, and the nominal grantees paid no part of the consideration, the instrument will operate as a mortgage, the nominal grantees being treated as trustees.

3. Mortgages—When Deed Will Operate as Mortgage.—Where upon its face an instrument discloses that the nominal grantees therein paid no part of the consideration, that the whole consideration was advanced by one named in but not designated as a party to the instrument, and that the property of the grantor was put in

lien to secure the payment of that loan, and that the notes executed for the loan were executed by the grantors, a purchaser must take notice that the transaction is one only for the security of money and is not a sale of property, and therefore operates as a mortgage; and being required to take such notice, cannot be a bona fide purchaser for value.

JOHN C. DUFFY, T. G. SKINNER and E. S. FOREMAN for appellants.

JOHN T. EDMUNDS, HENRY J. STITES and J. T. E. STITES for appeliees.

OPINION OF THE COURT BY TURNER, COMMISSIONER—Reversing.

In 1905 Kinney Tyler, apparently a thrifty negro man, was engaged with his partner in the undertaking business in Hopkinsville. In November of that year, desiring a better place for the conduct of the undertaking business, he bought from the Postel estate for one thousand dollars a lot in that city, the Planters Bank & Trust Co. acting as executor or agent for the Postel estate in the transaction.

Tyler paid no part of the consideration but executed his two notes for five hundred dollars each for the purchase money. Thereafter he proceeded to make certain excavations on the lot and constructed a foundation preliminary to the erection of the building to be occupied in the undertaking business.

In April, 1906, he had paid no part of the one thousand dollars purchase price, but on the 28th day of April he and his wife executed to W. T. Williamson and John T. Edmunds the following instrument, omitting description:

"This indenture made and entered into on this the 28th day of April, 1906, by and between Kinney Tyler and Mamie Tyler, his wife, parties of the first part, and W. T. Williamson and John T. Edmunds, jointly, parties of the second part, both parties being of the city of Hopkinsville, county of Christian and state of Kentucky.

"Witnesseth, that for and in consideration of the seventeen hundred ($1,700.00) dollars this day paid to them by the Planters Bank and Trust Company, at Hopkinsville, Kentucky, which sum was so paid and advanced by said company for the parties of the second part under and by an agreement that the same should be secured by

the bonds and lien hereinafter set out and retained, the parties of the first part have this day bargained, sold, aliened and conveyed and do by these presents bargain, sell, alien and convey unto the parties of the second part, jointly and subject to the lien herein retained for the benefit of said company, a certain lot or parcel of ground situated on the south-west corner of Virginia and Fifth streets in said city of Hopkinsville. . . .

"The advancement and payment of the said purchase price hereof is evidenced by four bonds of the parties of the first part, three being for the sum of five hundred dollars each and one for the sum of two hundred dollars, all dated this day, bearing interest from date until paid at the rate of six per centum per annum, payable semi-annually, and if such interest is not paid when due, then same shall become principal and bear a like rate of interest until paid. Said bonds are due five years after date, but all or any may be paid at the option of the second parties at any interest period, or rest, provided thirty days' notice is given said company of such payment or payments at any time. It is further provided that in case of default in the payment of any interest coupon attached to any of said bonds, there being semi-annual interest coupons attached, remaining for a period of thirty days at any time after such coupon is due, then and in that event, the whole series of said bonds shall immediately become due and collectible upon the expiration of such thirty days and suit may then be instituted for the collection of said bonds and for the foreclosure of the lien securing same.

"It is further agreed and understood and is a part hereof, that the said Planters Bank & Trust Company shall have to secure said bonds, a lien upon said lot, hereby created, being of the same force and effect as a vendor's lien retained in a deed to real estate, which lien shall continue for the benefit of the holder of said bonds until all the same shall have been paid off and discharged according to their terms and the terms hereof. It is further agreed, and is a consideration hereof, that so long as said bonds remain in effect the parties of the second part shall keep the improvements now being erected upon said property insured for the benefit of the said company in some reliable fire insurance company in not less a sum than the principal of said bonds, and in case they fail so to do, then the said company shall have the right to procure such insurance and the premium

therefor shall become principal hereunder and bear a like rate of interest until paid.

"To have and to hold (and) above described property unto the parties of the second part, subject to the said lien retained with a covenant of general warranty of title."

Prior to the execution of this instrument Tyler had contracted with builders for the erection, on the foundation which he had previously built, of the business house, and afterwards the building was constructed on the foundation and in accordance with the plans and specifications of the contract entered into by Tyler therefor, the contract price being seventeen hundred dollars; and thereafter, on the 25th of June, 1906, there was paid to the contractors seventeen hundred dollars by Williamson and Edmunds in accordance with that contract.

Tyler continued to occupy the building, and he and his partner conducted the undertaking business therein until about the first of November, 1912, when Tyler died.

From the date of his purchase until his death Tyler listed the property in his own name and paid the taxes thereon, and paid the interest up to the time of his death not only on the one thousand dollars original purchase price but on the seventeen hundred dollars mentioned in the instrument above referred to.

While the instrument shows on its face that Tyler and his wife executed the notes or bonds given for the seventeen hundred dollars, as a matter of fact they were only executed by Williamson and Edmunds, and such bonds or notes show on their face that "the agreements in said mortgage deed are made a part of this bond as though written herein."

Six or seven days after the death of Kinney Tyler, Williamson and Edmunds, assuming to be the owners in fee of this property, conveyed the same to the appellee, Carrie R. Brent, in consideration of thirty-five hundred dollars in cash.

Kinney Tyler left surviving him a wife and one daughter, and on the day before his death he executed a will written by the appellee, Edmunds, wherein he disposed of his estate except this lot and building.

This is an action by the daughter seeking to have it adjudged that the instrument in question is a mortgage and that she be adjudged the owner of the property, subject to the marital rights of Tyler's widow and the equities of the parties.

Williamson and Edmunds answered denying that it was a mortgage or intended to operate as such, and claiming to be the owners in fee under the conveyance from Tyler. Carrie R. Brent also answered asserting the same defense, and in addition that she was a *bona fide* purchaser for value without knowledge of the claim of the plaintiff.

Out of the purchase price of thirty-five hundred dollars Williamson and Edmunds paid off the seventeen hundred dollar debt and the one thousand dollar debt against this property, and out of the balance, for some reason which is not quite clear, they gave to the wife and daughter of Kinney Tyler one hundred and twenty-five dollars each, ostensibly as Christmas presents, and retained for themselves the balance of the purchase price.

The lower court dismissed the plaintiff's petition, adjudging Williamson and Edmunds to have taken a fee simple title, and the plaintiff has appealed.

A statement of the case, together with an analysis of the instrument involved, would seem to be conclusive that the whole transaction between Tyler and Williamson and Edmunds, and the bank, was a security for money without any purpose on the part of Tyler to part with the title to his property. While the conveyance on its face is made to Williamson and Edmunds, it shows that it was executed for the purpose of securing the money advanced by the bank and trust company for the erection of the building, and the only lien retained therein was for the benefit of the bank. The four bonds executed for that money by Williamson and Edmunds show on their face that it was treated by the parties at the time as a "mortgage deed;" it fails to show that Williamson or Edmunds parted with one dollar as the consideration for the execution of that instrument which they now claim to have been a deed in fee to them. On the contrary, it shows that the only consideration therefor was the furnishing by the bank of the seventeen hundred dollars with which to complete the building and which was used for that purpose.

The only office that Williamson and Edmunds filled in the transaction was that of the holders of the naked, legal title as trustees for Tyler and the bank. The most that can be said for them is that they lent their credit to Tyler to aid him in securing the money from the bank and took the conveyance as a security to indemnify themselves and to see that the bank loan was paid. Any other

interpretation would result in a conveyance by Tyler to Williamson and Edmunds of his property without any consideration whatever.

This instrument on its face cannot be construed as anything but a security for money, and therefore a mortgage; and particularly is this true when in addition to the instrument we have indisputable evidence in the face of the bonds executed by Williamson and Edmunds to the bank that at the time of the transaction it was treated by all the parties as a "mortgage deed."

Not only so, but it is admitted that up to his death Tyler remained in possession of and assessed the property in his own name and paid the taxes thereon, and during all that time paid not only the interest on the seventeen hundred dollars but the interest on the one thousand dollar note, which is not referred to in the mortgage.

It is the rule in this state that whatever the nature of the instrument may purport to be on its face, if, in truth, it is shown to be only a security for money, it must operate as a mortgage and not as a conditional sale.   Charles v. Thacker, 167 Ky. 835; Carr v. Morrison, 178 Ky. 683.

But it is insisted for the appellees that, before a deed may be declared to operate as a mortgage, the relationship of debtor and creditor must exist between the grantor and grantee, and that there being no such relation between Tyler and Williamson and Edmunds, it cannot so operate.

A sufficient answer to this would seem to be that the instrument on its face shows that the Planters Bank and Trust Company was in fact the grantee therein, and that it was made for its benefit, and that Williamson and Edmunds paid no part of the consideration but were only the intermediaries between Tyler and the bank through whom the bank, by having the legal title conveyed to them, sought to thereby better secure its loan.

But it is urgently insisted for the appellees that as the testimony of the widow in this action shows that she understood the transaction to be a conveyance of the fee simple title to Williamson and Edmunds, and as Kinney Tyler disclaimed ownership of this property in his will, the judgment of the chancellor should stand.

As to the evidence of the widow, it may be safely stated that her interpretation of the effect of this transaction is of little value to the court, and it may be that that interpretation was in some degree superinduced by

the munificent Christmas present given her by the appellees.

In interpreting the disclaimer in the will of Kinney Tyler we have not lost sight of the fact shown in the record that it was written the day before he died, when he was desperately ill and said by some of the witnesses to have been totally incompetent; that it was written by Edmunds himself, one of the nominal grantees in that instrument and is therefore in his language; and under these facts, taken in connection with the well known fact that wills generally *dispose* of property and do not consist of disclaimers as to the ownership of property, we are not inclined to give it controlling effect.

But even in his will Kinney Tyler stated that he had paid the interest on the money, the taxes on the property, and kept up the repairs, and it further discloses that even in his dying condition he still had in mind that he had some right or equity in that property, for he says, "It is my desire that my said executor shall buy said building, if said gentlemen will sell the same for what it cost, and take deed thereto in equal interest to my wife and daughter," and then authorizes his executor to use the assets of his estate to that end.

The remaining question is whether the appellee, Carrie R. Brent, is an innocent purchaser for value, for if that instrument on its face may be said to have conveyed the fee simple title to Williamson and Edmunds, she had a right to rely upon it, there being no evidence outside of that instrument that she had any notice of the plaintiff's claim.

The question is, what one would find from the record, and what conclusion might fairly be drawn from the examination by a person of ordinary intelligence of that instrument? Such a prospective purchaser would find on the face of that instrument that while Williamson and Edmunds were the nominal grantees therein, the whole consideration for the execution of that instrument was advanced by the Planters Bank and Trust Company, and that the property of Tyler was put in lien by that instrument to secure that loan; that although Williamson and Edmunds were the nominal grantees therein, they, in fact, advanced no part of the money and undertook to do nothing except they were required by the bank to keep the property insured; he would find from the face of that instrument that the bonds or notes executed to the bank

were executed by Tyler and wife and their property was put in lien to secure the payment of same.

Therefore, upon its very face the purchaser would know that the transaction described in that instrument was a security for money and not a sale of property, and it must, therefore, be that the appellee, Carrie R. Brent, having these things staring her in the face on the record must be presumed to have given them the interpretation of an ordinarily intelligent person and to have understood therefrom that Tyler only put his property in lien.

The judgment is reversed, with directions to adjudge the appellants the owners of the property subject to the marital rights of Tyler's widow and the equities of the parties.