## Owens v. Curd and Drummond.

(Decided June 24, 1921.)

### Appeal from Jefferson Circuit Court (Common Pleas, Second Division).

1. Contracts—Performance Upon Contingency.—Parties may enter into a contract to be performed on a contingency either certain or uncertain, and performance may be demanded whenever the contingency happened, or by the exercise of the proper efforts on the part of the promisor it should have happened; and within this rule, if performance consists in payment, and it is to be made out of a particular fund, it can not be demanded until that fund is realized, unless the failure to realize it is due to the neglect of the promisor or his unreasonable refusal to take any action looking to a realization of the funds

2. Contracts—Conditional Promise—Pleading—Evidence.—In a suit on a conditional promise to pay out of a designated fund, the burden is upon the plaintiff to both allege and prove either the realization of the fund, or that it could have been realized by the proper efforts on the part of the defendant.

PERRY B. MILLER, ALFRED SELLIGMAN and JOSEPH SELLIGMAN for appellant.

J. WHEELER CAMPBELL for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On December 14, 1916, appellant (plaintiff below), W. C. Owens, bought an option from H. T. Williams and wife, M. B. Williams, entitling him to purchase their tract of land containing 120 acres located in Clay county,

Alabama, on or before April 16, 1917, for the consideration to be paid of the sum of $4,000.00. The land seems to have been valuable principally for the graphite deposits contained in it. On April 6, 1917, just ten days before the expiration of the option, plaintiff entered into a written contract concerning it with the defendants, Curd and Drummond, which contract, omitting signatures and proof of execution, reads:

"This agreement made and entered into this 6th day of April, A. D. 1917, by and between W. C. Owens of Louisville, Kentucky, party of the first part, and M. O. Curd and E. M. Drummond, both of Louisville, Kentucky, parties of the second part.

"Witnesseth, That whereas said party of the first part is the owner of a certain option running from H. T. Williams and M. B. Williams, his wife, to him, dated the 14th day of December, 1916, to acquire certain lands situated in Clay county, state of Alabama, for the sum of four thousand ($4,000.00) dollars, said land having therein certain veins or deposits of graphite ore, and said option being in force until the 16th day of April, 1917.

"And, whereas, said parties of the second part are desirous of making an examination of the land covered by said option with the purpose of acquiring and developing same should it in their estimation be profitable to do so.

"Now, therefore, in consideration of the premises the parties hereto have entered into the following agreement, party of the first part will assign to the parties of the second part the above described option. The parties of the second part will make an immediate examination of the property and on or before the 15th day of April will signify their intention either to acquire said land, or surrender said option to the party of the first part. In the event that they decide to acquire the said land, they agree to pay the owners thereof the sum of four thousand ($4,000.00) dollars, the amount of the purchase price recited in the said option, and will at the same time pay to the party of the first part the sum of two thousand ($2,000.00) dollars. The parties of the second part will further enter into an agreement with the party of the first part to pay him the further sum of four thousand ($4,000.00) dollars out of the first profits from the operation, lease or sale of said land."

Defendants immediately sent an expert to make investigation of the local conditions for the purpose of ascertaining whether or not they would exercise the privileges given to them by that contract. There was not sufficient time before plaintiff's option elapsed, and it was extended ten days, within which time defendants determined to purchase the property upon the terms stated in their contract with plaintiff, and Williams and wife executed to them a deed for the land and they paid the grantors the consideration named in the option of $4,000.00 and paid plaintiff the $2,000.00 which they agreed in their contract to pay him at that time. They did not develop the property or take therefrom any graphite because, as they allege and we think prove, that owing to the existing conditions concerning the cost of installing machinery, as well as the decline in the price of the prepared graphite for the market, they could not do so at a profit, but on the contrary such a venture would have inevitably resulted in great loss. Neither could they sell the property, as we think the proof shows, nor lease it so as to realize a profit thereon.

On the 18th day of September, 1919, plaintiff filed this action against them seekig to recover the $4,000.00, mentioned in the last sentence in the contract, and he alleged in his petition, not only that defendants had not developed the property, but that they had delayed for an unreasonable time to do so or to sell or lease it, and that they could have operated the property and could have sold or leased it so as to realize a sufficient profit to discharge their contractual obligation to him, and which allegations were necessary to make the petition good. The answer denied the material allegations of the petition and injected therein some other matters which we think are irrelevant, and which seem to have been abandoned, and they will not be adverted to in this opinion. In another paragraph it was alleged "that they (defendants) made diligent effort and search for the best and most businesslike method possible for the development of the graphite ore alleged to exist upon said property; that they made inquiries and endeavored in all reasonable ways to ascertain whether it were or not a possibility to establish machinery and mills upon said property which would perform the work of converting the crude material in the soil into such product as was commercially salable, and whether this work could be

done at a profit. Defendants say that as a result of their investigations they learned that it was impossible at the time and under the circumstances as they existed to establish a mill or mills, mine or mines, upon said property in the operation of which the defendants could have developed the graphite upon said property at a profit. Defendants further say that they made diligent efforts and sought at various times to either sell or lease said property at a profit and that likewise their efforts in this respect failed, and that they have ever since their acquisition of said property, and are now utterly unable to either sell or lease said property at a profit.'' A reply put in issue those affirmative allegations as well as all others made in the answer and upon trial the jury to whom the case was submitted under instructions of the court returned a verdict for defendant, and plaintiff's motion for a new trial having been overruled he prosecutes this appeal.

The substance of the complaint of counsel for plaintiff is that the court should have sustained his motion for a directed verdict in his favor and as a basis for this contention reference is made to the case of Runyan v. Culver, 168 Ky. 45, which treats of the impossibilities of the performance of contracts, including an act of God, as a defense to a suit thereon. Reliance is also had upon the cases of Monarch Oil, Gas & Coal Co. v. Richardson, 124 Ky. 602; Dinsmoor v. Combs, 177 Ky. 740; Soaper v. King, 167 Ky. 121; Plumber v. Southern Oil Co., 185 Ky. 243, and other kindred cases from this court, holding that the primary purpose in a lease for operation for oil, gas and other mineral substances, wherein the lessee is to obtain an agreed fractional part of the minerals taken from the ground as consideration for executing the lease, is to procure development rather than the reception of rentals in lieu thereof, and that after the expiration of the agreed time within which operations should commence the lessor may refuse to accept the rent and demand development within a reasonable time thereafter.

There can be no criticism of the correctness of each of the principles of law relied on, and in a proper case we would unhesitatingly adopt and apply them. The facts in this case, however, do not bring it within the doctrine of either of the classes of cases relied on.

In the instant case the only circumstance to which the doctrine of the Runyan case could possibly apply is the failure of defendants to make "profits" out of which plaintiff could demand payment of his claim. But for the doctrine of that case to apply here there must have been an *agreement* to make profits in which case the fact that it was impossible to do so would not under that doctrine constitute a defense. We have searched the contract in vain to find any *agreement* to that effect on the part of defendants. It is stated in the contract that they were "desirous of making an examination of the land . . . with the purpose of acquiring and developing same should it in their estimation be profitable to do so." That language relates to and bears upon more immediately their determination to exercise their right to purchase, and it was agreed that if the purchase was made they would pay to Williams and wife the consideration for the land and pay Owens $2,000.00, after which they agreed to "enter into an agreement with the party of the first part (plaintiff) to pay him the further sum of four thousand dollars ($4,000.00) out of the first profits," etc., which is to say that if there should be no profits, or there could be none such realized by either of the methods stipulated (development, sale or lease) there would be nothing out of which plaintiff's claim could be paid. In other words, plaintiff's claim, under the phraseology of the contract, is analogous to a partnership interest up to the sum of $4,000.00 to be paid out of the profits of the concern if such profits were realized, and if those upon whom the duty was cast to realize them should neglectfully refuse to make the proper effort, then they would be liable, if by such effort profits could have been realized.

Neither does this case come within the doctrine of the oil lease cases referred to. In them the lessor's compensation is not determinable by the fact of whether profts or no profits are realized. The compensation in those leases was an agreed proportion of the minerals produced by the development and was to be measured by the amount so produced, whether that production was profitable to the lessee or not. In them the lessor did not agree to look only to *profits* for his compensation, nor did the lessee agree to pay only with porfits. The agreement of the parties to such leases is not affected the one way or the other by the question of profits

to the lessee. Not so here, since as we have seen, the effect of the agreement which defendants entered into with plaintiff was to pay him the $4,000.00 sued for, provided they made, by operation, sale or lease of the premises, sufficient profits with which to do so, or provided the conditions were such that they could have by either of those methods made profits sufficient for that purpose; and the duty devolved upon them to actually make the profits by some of the methods provided for within a reasonable time, or if not they would become liable to plaintiff if the conditions were such that they could have brought about the event (make profits) upon which their liability to plaintiff depended. In other words, the contract under consideration is what is known in law as a ''conditional promise'' and it belongs to that class of conditional promises which depends for their enforcibility upon the happening of some event or contingency which is altogether uncertain. That such contracts are binding and enforcible, is shown by the text in 13 Corpus Juris, 630-631, and by the case of Central University of Kentucky v. Cox, 136 Ky. 260.

The condition or contingency in this case is the restriction of payment to a particular fund or to a fund which might or might not be realized from uncertain conditions, in which cases payment can not be demanded until the conditions are such that the fund is realized or might have been realized by proper efforts. The principle governing the right of the parties under such contracts is clearly stated on page 631 of the volume of Corpus Juris referred to, in this language: ''A contract or promise to pay may be restricted to a particular fund, so as to make the raising or the sufficiency of the fund a condition precedent to the liability, and in such case the promise cannot be enforced until the fund is realized, unless the failure to realize or collect the fund from which payment is made is due to the neglect, or to the unreasonable refusal to act, of the promisor, or is otherwise attributable to him. So, where the contract of the parties is that the creditor shall look to a particular fund, he cannot, on the failure of such fund not attributable to the fault of the debtor, hold the debtor personally responsible, unless the contract contains stipulations amounting to a guaranty that the funds specified shall be sufficient for payment.''

The burden is upon the plaintiff in a suit upon such a contract to both allege and prove all the facts necessary to fix liability on the defendant as is shown in the Cox case, *supra,* wherein this court said: "All that was necessary in order to show its (plaintiff's) right to recover thereon (the contingent promise) was for appellant (plaintiff) to allege, and prove, if denied, that the condition upon which the note was payable had taken place." Likewise, in the case of Eckler v. Galbraith & Lail, 12 Bush 71, the opinion says: "It was necessary, to enable appellant to recover, that he should prove not only the making of the promise, but the existence of the condition upon which it was to become enforceable. The ability of Lail to pay is the essence of the undertaking, and it must be satisfactorily proved; otherwise no judgment can be rightfully rendered against him." In that case the promisor had agreed to pay "as soon as he was able," and in the Cox case the promise was to make payment at the promisor's death, or at the death of his wife, if she outlived him, if there was a sufficiency of his estate then in existence for that purpose. Here, as we have interpreted the contract, defendants promised to pay plaintiff out of profits, which they either actually received or which under existing conditions they could have received by making the proper efforts.

Plaintiff introduced no witnesses but himself, and the only fact which he testified to looking to the establishment of liability was that defendants had not actually made profits, either by development, sale or lease of the premises involved. He made no effort to show that they could have made such profits under existing conditions, if they had chosen to do so. He therefore, according to the doctrine of the cases, *supra,* failed in his proof and at the close of the testimony the court should have sustained defendants' motion for a peremptory instruction in their favor. He failed to do so, however, and defendants introduced their evidence which did not supply plaintiff's failure of proof, but on the contrary established the fact that conditions had never been such that a profit could be realized, through any of the stipulated methods, sufficient to pay plaintiff any part of his claim. The court submitted the latter issue to the jury by an appropriate instruction, resulting in the verdict and judgment of which complaint is made.

There is nothing in the case of Denny v. Campbell, 9 Ky. L. R. 367, in conflict with the foregoing conclusions. In that case the promisor agreed to pay the promisee the stipulated sum when he collected certain designated bonds issued by Lafayette county, Missouri. In a suit upon that obligation the defense was that the bonds had not been collected nor could they be collected. The court correctly held that it was his duty to make an effort to collect them, since under the condition of the law at that time the fact of insolvency or inability to pay could be proven only by a judicial proceeding instituted for the purpose of collection, followed by an execution and return of "no property found," or some other judicial determination of the fact that collection was impossible. Clearly, under that state of the law it was incompetent to prove that fact by oral testimony and in the absence of the demonstration of the fact in the legal way it could not be relied on as a defense. We have no such rule for the establishment of the determinable fact here, i. e., the making of, or the ability to make, profits, since it would be manifestly impractical and unreasonable to require defendants to demonstrate their inability to make profits by requiring them to construct a costly plant and to operate it, all of which, under the proof, would have resulted in a loss of many thousands of dollars, in order to enable them to defend upon the ground that it was impossible under the conditions (for which they were not responsible) to make profits.

Under our interpretation of the contract we feel that it is proper to say that whenever the conditions arise and plaintiff can prove the contingency upon which the maturity of his demand depends, as herein indicated, he may yet sue to recover his claim.

Finding no error prejudicial to the substantial rights of plaintiff the judgment is affirmed.