## Southern Trust Co. et al. v. First-City Bank & Trust Co of Hopkinsville et al.

(Decided Feb. 5, 1935.)

SELDEN Y. TRIMBLE for appellants.

WHITE & CLARK for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

This is a contest between holders of liens on the rents, issues, and profits of a farm. The case presents a question not heretofore decided by the court in the several suits of this character.

On January 2, 1925, C. W. Garrott executed two mortgages on his farm of 752 acres to the Southern Trust Company to secure one note for $45,000, and another for $2,306, both maturing in installments, but having precipitating provisions upon the nonpayment of

interest or of any installment. These instruments were promptly recorded. The larger note and mortgage were assigned to the Metropolitan Life Insurance Company. Each mortgage contained the following provisions:

> "The mortgagor * * * does hereby mortgage and convey unto the mortgagee, its successors and assigns, the following tract of land, together with all its rents, issues, profits and all appurtenances and improvements now upon or which may hereinafter [sic] be put upon said real estate."

Another provision assigned the income and other benefits accruing from mineral, agricultural, and other leases of the property.

In April and May, 1930, Garrott executed chattel mortgages to the First-City Bank & Trust Company of Hopkinsville, or its predecessor, upon certain live stock and implements, also upon the crops growing and to be grown upon the farm, to secure the payment of money loaned him from time to time. The funds, totaling $8,-600, were used to finance his farming operations, pay his taxes, and at least pay part of the interest on his mortgage debt. These mortgages were taken with actual as well as constructive knowledge of the others. They also were promptly recorded.

This suit was filed December 22, 1930, by the Southern Trust Company to recover a balance of $1,350 and to enforce its lien on the land and the crops. It asked for the appointment of a receiver to take possession of all the property. Other parties came into the suit, including the Metropolitan Life Insurance Company and the First-City Bank & Trust Company, which set up their debts and liens, respectively. A receiver was appointed March 19, 1931. At the judicial sale, the insurance company bought the land for $38,000, which was not sufficient to satisfy the debts against it. The crops put in the hands of the receiver yielded $4,-553.18. The live stock and other chattels mortgaged to the bank did not bring enough to satisfy its debt. So the issue as to the right of the proceeds of the crops to satisfy the respective deficiency judgments and liens remained to be decided. The trial court adjudged the bank's lien superior, and the Southern Trust Company and Metropolitan Life Insurance Company appeal from that judgment.

In the opinion of Watts' Adm'r v. Smith, 250 Ky. 617, 63 S. W. (2d) 796, 802, 91 A. L. R. 1206, there is a full discussion of the subject of liens on "rents, issues, and profits" of land. Upon the consideration of the historical development of mortgages and the rights of the parties thereunder, particularly in our own jurisprudence, and the review of foreign and domestic cases, the conclusion was reached that where there is a pledge of the rents, issues, and profits, the mortgagee is entitled:

> "First, to subject by proper proceedings all rents, issues, and profits accruing thereafter. This right to the after accruing rents, issues, and profits is superior to the rights of any others to such after accruing rents, issues, and profits who acquired their rights with notice actual or constructive of the mortgagee's rights to such rents, issues, and profits. * * * Secondly, the mortgagee is entitled to the rents, issues, and profits accrued or on hand with the mortgagor at the time the mortgagee seeks to subject them to his mortgage, at least if liens, voluntary or involuntary, in favor of third parties in and to such accrued rents, issues, and profits or those on hand have not come into existence prior to the time the mortgagee seeks to subject such accrued rents, issues, and profits to his mortgage."

As stated in the beginning, the exact issue now presented has not been decided. It made its appearance in Northwestern Mutual Life Insurance Company v. Stofer, 242 Ky. 144, 45 S. W. (2d) 1025, where the United States had taken a mortgage upon growing crops already covered by such a lien as that of the appellants. But in so far as it pertained to the government, the suit had been dismissed, so the opinion left open a decision as to its rights. It was decided only that the first mortgagee was entitled to have a receiver take possession of the crops and to an enforcement of its lien, subject to whatever rights the United States might have. The question also appeared in Louisville Joint Stock Bank v. Watts, 251 Ky. 832, 66 S. W. (2d) 39. But it was held that the crop mortgage created no lien as against the prior mortgagee of the land and rents, issues, and profits because it was executed only by the husband of the joint owner of the land and was invalid. In Brasfield v. Northwestern Mutual Life Insurance

Company, 233 Ky. 94, 25 S. W. (2d) 72, the contest was between the mortgagee of the rents, issues, and profits and a bank which took a chattel mortgage on the crops after the former had made application for a receiver in a suit to enforce their lien. Because of that, the chattel mortgage of the bank was held to be inferior. The issue in Watts' Adm'r v. Smith, supra, was between the mortgagee and unsecured creditors. The decision sustained the lien even though no receiver had been asked because the mortgagor had died and the crops, by operation of law, had come into the control of his personal representative, which precluded the appointment of a receiver. So in all of these cases, the mortgagees prevailed because they had moved to enforce their liens, that is, to bring the crops into subjection, before the other parties had undertaken to subject them to their claims.

The effect of these several decisions is that where there is a pledge of, or a contract right to, the rents, issues, and profits, the mortgage or lien will be construed to cover those things on hand when they are taken into possession by the mortgagee or the receiver.

It was provided in these two mortgages of the appellants:

"That upon institution of proceedings to foreclose this mortgage plaintiff shall be entitled to have a receiver appointed by the Court to take care of the premises, to collect the rents and profits and to put the premises in good repair."

Such an agreement or contract right of the mortgagee to have a receiver appointed was not contained in the mortgage involved in Watts' Adm'r v. Smith, supra, and appellants would from that fact draw a distinction between the two cases to their advantage. We cannot concur in the effect of such distinction. As pointed out in that opinion, the courts generally hold that when the mortgage carries such a provision along with the pledge of the rents, issues, and profits, the mortgagee is entitled only to those which accrue after such possession is taken or which are due at the time and as to which no intervening equity has attached. Whatever may be the rights of such a mortgagee in respect of the property covered under our construction of an instrument containing this provision, it seems to us

that where there is a contract right to the appointment of a receiver in case of default by the mortgagor, it discloses an intention not to subject the income and usufruct to the potential lien given by the instrument. By such a provision the mortgagee has expressly limited the perfection of his inchoate right to the time when he shall invoke the aid of a court of equity. It shows an intent to waive his potential interest until and unless he shall make that move.

Indeed, the whole tenor and effect of the instruments mortgaging the rents, issues, and profits, in addition to the real estate, is that they are regarded as secondary security with the lien continuing as an inchoate right which will be and must be perfected or consummated by asserting the right by some definite action looking toward possession and subjection. Of course, that must be done in some lawful manner. Ordinarily, even without a specific provision authorizing, it is by asking the court to have a receiver take control for the pledgee's benefit. Such, in effect, is an equitable ejectment of the mortgagor and the acquiring of possession by the mortgagee. Until that is done, he does not acquire a vested lien that will prevent a completed lien imposed subsequent to his inchoate lien from becoming prior and paramount in effect. Until that is done, the mortgagor may dispose of the rents, issues, and profits as he desires without being liable to account therefor to the mortgagee.

This conception is well founded upon the genesis and evolution of the law of the subject as related in Watts' Adm'r v. Smith, supra. It is strongly supported by practical and equitable considerations. It permits the utilization of the land and avoids waste, which is the common interest of all concerned. Were the contract not so regarded, the mortgagor would be so tightly bound that he could collect no rents nor sell any of his products. Perilous indeed would be his situation and as well of those who have dealt with him in any financial way. Therefore, up until the time the mortgagee has chosen to exercise his right to perfect his lien on the rents, issues, and profits, any intervening lien acquired upon them must take precedence and be held superior. This conclusion is sustained by the overwhelming weight of authority. The cases are collated in 4 A. L. R. 1410, 55 A. L. R. 1022, 87 A. L. R.

628, 91 **A. L. R.** 1221, and need not be specifically cited here.

The judgment is affirmed.