## Davis v. Doublin.

May 10, 1940.

Joe L. Price, Judge.

L. B. Alexander for appellant.

C. H. Lowery, Jack E. Fisher and W. M. Oliver for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming in part and reversing in part.

On September 24, 1934, the appellant, Clara Pauline Davis, conveyed to the appellee, Lena H. Doublin, an apartment house in the city of Paducah on which the Metropolitan Life Insurance Company held a mortgage

amounting to approximately $16,175, the payments on which amounted to $900 semi-annually. The conveyance was subject to this mortgage and appellee paid appellant approximately $4,000 in money and securities and executed to her a note for $4,070 in part as follows:

Paducah, Kentucky

$4070.                        September 24, 1934.

"For value received on or before the times and in the manner hereinafter specified, I promise to pay to the order of Clara Pauline Davis the sum of Four Thousand Seventy Dollars ($4,070), together with interest at the rate of Six Percent (6%) per annum payable semi-annually from October 1, 1934 until paid  *  *  *. This note is to be paid from the net proceeds collected in rents upon the property described in the deed above referred to. That is, from the monthly rentals collected the semi-annual installments and interest on an indebtedness of Sixteen Thousand One Hundred Seventy Five Dollars ($16,175) is to be paid to the Southern Trust Company, the taxes, city, county and state, fire and tornado insurance, the heat, lights, water, janitor service and installment expenses are to be paid then the payor is to pay to the payee one-half (½) of the monthly net proceeds. Such payments are to be paid monthly."

It was further provided in the note that appellee was to keep a record of all collections and disbursements in the operation of the apartment house for the benefit of the holder of the note.

Appellee paid nothing on the note and this action was filed on October 11, 1935, alleging that she had violated her contract by failing to make payments on the note and by making excessive and unwarranted expenditures from the rents received on the property. It was further alleged that by appellee's negligence and misconduct in the operation of the property the fund from which the note was to be paid had been caused to fail and that she had become personally liable on the note. A foreclosure of the lien retained to secure the note was sought as well as personal judgment against appellee.

Motion was made for a receiver to take charge of the property and this motion was sustained and a re-

ceiver appointed on October 1, 1936. The Metropolitan, holder of the first mortgage, was made a party defendant and intervened in the action seeking a foreclosure of its mortgage. This foreclosure was granted during the course of the action and the property was sold for approximately $84 less than the amount of its mortgage debt.

During the progress of the litigation a separate and independent judgment was entered in appellant's behalf against appellee for two semi-annual payments of interest on the $4,070 note, this judgment being for the approximate sum of $291. Execution was issued on this judgment and levied on certain property of appellee but appellee sold the property levied on to one Dr. J. H. Kidd, who now holds the purchase money ($500) to indemnify himself against the lien of the execution, although he is not a party to this action.

A report was filed by appellee showing the amount of rents collected by her on the building and disbursements made from this fund. This report showed that she had purchased certain furniture and electric refrigerators for the apartments amounting to approximately $2,400. Exceptions were filed to this report and the trial court sustained exceptions to certain items amounting to $827.42 and also sustained exceptions to the expenditures for furniture and refrigerators amounting to $1,455.70. During the pendency of the action the receiver was ordered by the court to pay, and did pay, $425 to the conditional sellers of the furniture and refrigerators in partial satisfaction of the amounts due them. Later the furniture and refrigerators were sold for approximately the amount due thereon. A street assessment lien amounting to $124.83 was asserted against the apartment house during the pendency of the action and this sum was also paid by the receiver on court order. This lien had not been taken into consideration on the sale of the apartment house and the amount thereof is properly chargeable to appellant.

When final judgment was entered appellee had in her hands $83.93 in rents and the receiver, after paying expenses of the operation of the apartment house and other sums ordered paid during the litigation, had a final balance of $916.57 in his hands. The trial court made certain adjustments of accounts which resulted in

a final judgment directing the payment of $818.61 by the receiver to appellant and the balance of $95.96 to appellee and cancelling the preliminary judgment of $291 for semi-annual interest on the note rendered in appellant's behalf against appellee and adjudging a release of the lien secured by levy of execution on that judgment. The trial court also found that it was the intention of the parties that there should be no personal liability on the note sued on and that it was payable only from rents received on the property. From this judgment appellant prosecutes this appeal, insisting that the trial court was in error in denying personal judgment on the note and also that numerous errors were committed in the adjustment of accounts between the parties.

At the outset it may be said that there is no complaint made by either party as to the action of the chancellor in sustaining exceptions to the report filed by appellee and disallowing credits claimed by her for certain items, including the furniture and refrigerators, as above mentioned. Appellant's complaint in this particular is addressed solely and alone to the method used by the trial court in ascertaining the amount due appellant in view of his findings on the exceptions.

It is first contended by appellant that the note sued on contained an unconditional promise to pay and that therefore appellee was personally liable thereon. In this, however, we think there is little merit because it appears that the language of the note clearly contemplates that its payment was limited to funds to be realized from net rentals on the property. If we had any doubts on this score, the allegations of appellant's petition showed that such was the construction placed on the note by her for in two separate places in the petition she alleges that the note "obligated this plaintiff to accept payment of her note out of the rents and profits of said property." By further allegations of the petition she alleges that appellee had become personally liable by reason of negligence and misconduct in the management of the property and diversion of the rent funds to unauthorized purposes. These allegations show that appellant did not consider that the note imposed personal liability on appellee.

Appellant next insists that although there was no

personal liability on the note in the first instance, yet by appellee's negligence and misconduct the fund from which the note was payable was caused to fail and that she thereby became personally liable. This contention might be justifiable if the proof was sufficient to show that net rentals available for payment on the note would have been realized from the property with proper and prudent management. In this jurisdiction it is well settled that when a contract to pay is restricted to a particular fund, the obligor becomes liable where a failure of the fund is brought about by the negligence or misconduct of the obligor or is otherwise attributive to him. Owens v. Curd, 192 Ky. 146, 232 S. W. 639; Odem Realty Co. v. Dyer, 242 Ky. 58, 45 S. W. (2d) 838. But a further qualification of this rule is that although it is established that the obligor was guilty of negligence or misconduct, still there can be no recovery unless it is also established that such negligence or misconduct is responsible for the lack of funds to discharge the debt. If the obligor should have performed his part of the contract faithfully and no funds would have been realized with which to pay the debt, in whole or in part, then his negligence or misconduct is not the cause of the failure to raise the funds to pay the debt. Fox v. Buckingham, 228 Ky. 176, 14 S. W. (2d) 421. The burden is, of course, on the obligee to establish that negligence or misconduct on the obligor's part was the cause of the failure of the specific fund out of which the obligation was to be paid.

In the instant case we are not satisfied from the proof that any net rentals would have been produced by prudent operation of the apartment building. It rather looks as if the rentals would have been exhausted by the payment of the semi-annual payments of $900 on the first mortgage in addition to necessary operating expenses of the apartment. The receiver operated the apartment for more than 18 months and wound up with a balance of $916.57 in his hands without making payments of the semi-annual installments on the mortgage—during this period these installments amounted to $2,700. Even though we take into consideration the extraordinary costs paid out by him, such as court costs, payments on the furniture and refrigerators, payment of the street assessment and other items not properly chargeable to the operation of the building, it is still

doubtful if there would have been any net rentals after the payment of operating expenses and semi-annual payments of $900 on the mortgage. The burden was on appellant to establish that there would have been net rentals to pay on the note if the apartment had been prudently operated and we feel that she has failed to maintain this burden. The trial court was correct in denying personal judgment against appellee for the full amount of the note.

In adjusting the accounts between the parties the trial court failed to take into consideration the item of $827.42 to which he sustained exceptions and also failed to take into consideration the $425 paid out by the receiver on the furniture and refrigerators. This latter amount was paid from rentals and for appellee's benefit on property purchased by her. Appellant was entitled to credit for one-half of this sum in the adjustment of accounts as well as one-half of the item of $827.42. These two items plus the $1,455.70, wrongfully paid out on furniture and refrigerators, makes $2,708.12, one-half of which, or $1,354.06 was payable to appellant. In addition thereto appellant was entitled to $41.96, one-half of $83.93 in appellee's hands from rent, making a total due appellant of $1,396.02. As the street assessment amounting to $124.83, for which appellant was responsible, was paid from the rent fund appellant should be charged with $62.41, one-half of this sum. This leaves a balance in appellant's favor of $1,333.61. The trial court should have ordered the $916.57 in the receiver's hands paid to appellant and credited on this sum leaving a balance of $417.10, for which personal judgment should have been rendered against appellee and the judgment in favor of appellant against appellee for the two installments of semi-annual interest should not have been cancelled and set aside.

In ascertaining the balance between the parties we have not taken into consideration an item of $180 allowed to appellee by the trial court, being six percent interest on $1,000 for a period of three years. While the judgment does not so specifically recite, this is apparently interest allowed appellee on a part of the purchase price of the apartment. We are unable to understand upon what theory this allowance was made and find nothing in the record justifying such a finding. Though

it is challenged in appellant's brief, counsel for appellee point out to us no theory upon which it could be sustained.

It is next contended by appellant that the mortgage of the Metropolitan contained a provision giving it a lien on the rents, issues and profits from the apartment building so that it had a lien both on the building and the rents while appellant's note entitled her only to a lien on the building and that therefore there should have been a marshalling of liens requiring the Metropolitan to assert is lien first on the rents. As to the fund actually in the receiver's hands, this would have profited appellant nothing and the rule as to marshalling of liens has no application in a case like this where there are only two funds to be participated in by two creditors, one of whom has a prior lien on both funds—it is immaterial, in these circumstances, from which fund the prior lien creditor is paid. But appellant insists that the payments illegally made by appellee from rents should be brought into the fund and the Metropolitan required to assert its lien on sums thus brought in, thereby leaving to appellant the right to assert her lien on the proceeds of the sale of the apartment to this extent. There is no merit in this contention, however, because the lien of the Metropolitan on the rents, issues and profits did not become operative until the receiver was appointed and it took steps towards asserting its lien. Southern Trust Co. et al. v. First City Bank & Trust Co. of Hopkinsville, 259 Ky. 151, 82 S. W. (2d) 205.

The sum and substance of our conclusion is that the fund of $967.57 in the receiver's hand should have been ordered paid to appellant and personal judgment rendered for her against appellee for $417.10 with the right on her part to proceed with the collection of the judgment awarded for her semi-annual interest.

The judgment is affirmed to the extent that it denied personal judgment against appellee for the full amount of the note and reversed in the particulars mentioned with directions to enter a judgment in conformity with this opinion.