## In re BUTTERMILK TOWNE CENTER, LLC, Debtor.

### No. 10–21162.

United States Bankruptcy Court,
E.D. Kentucky,
Covington Division.

May 17, 2010.

Paige Leigh Ellerman, Cincinatti, OH, for Debtor.

Timothy P. Palmer, Pittsburgh, PA, Daniel E. Hitchcock, Lexington, KY, for Bank of America.

### MEMORANDUM OPINION
### AND ORDER

The issue presented on creditor's objection to Debtor's Motion to Use Cash Collateral is whether an alleged "absolute" Assignment of Rents and Subleases and/or creditor's actions in connection therewith,

divested the Debtor of title to the rents, such that the rents are neither property of the estate nor cash collateral. For the reasons set forth herein, the creditor's objections on these issues are overruled.

1. *Factual and procedural background*

In August 2004, Buttermilk Towne Center, LLC (the "Debtor") entered into a Construction Financing Agreement with LaSalle Bank National Association n/k/a Bank of America, N.A. ("the Lender" or "BOA") pursuant to which the Lender was to loan the Debtor up to $34,700,000.00 for the construction of the Buttermilk Towne Center project ("BTC"). Funds were to be obtained by the Lender's purchase of bonds issued by the City of Crescent Springs, Kentucky ("the City").

The City issued its Taxable Industrial Building Revenue Bonds, Series 2007 (Buttermilk Towne Center, LLC Project) dated December 28, 2007 ("the Bonds") outstanding as of March 29, 2010 in the principal amount of $34,664,322.49, plus interest accrued in the amount of $1,719,934.30. The Lender purchased the Bonds pursuant to a Bond Purchase Agreement dated December 28, 2007 ("the Purchase Agreement") among the City, the Debtor and the Lender. The Bonds are secured by an Amended and Restated Trust Indenture dated December 1, 2007 ("the Indenture") between the City and U.S. Bank National Association ("Trustee"), as Trustee for the holders of the Bonds.

The fee interest in the BTC real estate is owned by the City and leased to the Debtor pursuant to an Amended and Restated Agreement of Lease between the City and Debtor dated December 1, 2007, recorded in the Kenton County Clerk's Office on December 28, 2007 (the "Ground Lease"). The Debtor, in turn, leases the property pursuant to various "Retail Leas-es", *see e.g.*, Doc. # 6 and Doc. # 9 (herein "Retail Leases"). It is the rents due to Debtor under the Retail Leases which are at issue herein.

In connection with the Financing Agreement, the Debtor executed and delivered to Lender (i) an Amended and Restated Open–End Mortgage Security Agreement and Assignment as to Real Estate Matter dated December 1, 2007 and recorded in the Kenton County Clerk's Office on December 28, 2007 (the "Mortgage"), and (ii) an Assignment of Rents and Subleases dated August 1, 2004 and recorded in the Kenton County Clerk's Office on September 1, 2004 (the "Rents Assignment").

Pursuant to the Ground Lease and the Indenture, the principal and interest on the Bonds are to be paid via the ground lease payments made to the City by the Debtor. The Bonds mature on December 1, 2032, are subject to mandatory redemption through monthly payments of principal and interest beginning February 1, 2008 and were subject to mandatory purchase by the Debtor on December 31, 2009, unless otherwise extended. The Debtor was unable to make the required mandatory redemption payments and failed to purchase the outstanding Bonds on December 31, 2009.

On April 6, 2010, the Lender and Trustee provided written notice of default to the Debtor and its retail tenants of the Debtor's default and termination of Debtor's "license to collect rents" pursuant to the Rents Assignment. The next day, the Lender filed a foreclosure Complaint against Debtor in the United States District Court for the Eastern District of Kentucky and sought the immediate appointment of a receiver. *Bank of America, N.A. v. Buttermilk Towne Center, LLC,* No. 2:10–cv–00076 (E.D. Ky. April 7, 2010) (the "District Court Action"). The receiver motion was overruled without

prejudice to re-file upon Debtor's appearance in the case. The Debtor filed its Chapter 11 petition in this court on April 28, 2010.

This matter is before the court on the Debtor's Expedited Motion for Use of Cash Collateral ("Cash Collateral Motion") (Doc. # 5), the Objection of Bank of America, N.A. (Doc. # 23), and the Reply of Debtor (Doc. # 25). The Trustee has filed a Joinder to the Objection of Bank of America, N.A. (Doc. # 27). The court heard this matter on April 30, 2010 and took it under consideration for decision.[1]

## 2. *Discussion*

A Debtor's motion to use cash collateral is governed by Bankruptcy Code section 363, which provides in pertinent part:

(a) In this section, 'cash collateral' means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property . . ., whether existing before or after the commencement of a case under this title.

(c)(1) If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

(A) each entity that has an interest in such cash collateral consents; or

(B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

(p) In any hearing under this section—

(1) the trustee has the burden of proof on the issue of adequate protection; and

(2) the entity asserting an interest in the property has the burden of proof on the issue of the validity, priority, or extent of such interest.

11 U.S.C. § 363(a),(c),(p).

The Debtor's Cash Collateral Motion contends that entry of its Interim Cash Collateral Order is necessary to ensure continued going concern operations, and to protect and preserve the value of the Debtor's assets. The Debtor proposes to use cash collateral to meet its post-petition obligations and pay its expenses, including general and administrative operating expenses, and other necessary costs and expenses, including maintenance and insurance, during the pendency of this case, as well as to make adequate protection payments to Lender and the Trustee (collectively the "Creditor").

The Debtor states that the Creditor's collateral consists of the a) Mortgage; b) the Ground Lease; c) the Rents Assignment, and d) the Indenture.

The Debtor further states that as adequate protection pursuant to Code section 361 it proposes to grant the Creditor a replacement lien consisting of a lien on all the Debtor's property of the same type and description as the pre-petition collateral to the extent the Creditor holds a valid,

---

1. The parties have stipulated that the facts set forth in their pleadings are undisputed and that the exhibits to their pleadings are admissible into evidence and constitute all the documents which govern the subject transactions.

properly perfected lien on such collateral as of the date of the filing of this case (the "Replacement Lien"), and monthly interest payments commencing June 2010 at the rate of 4.25% per annum in the amount set forth in the Debtor's Interim Budget ("the Adequate Protection Payments"). As further adequate protection, the Debtor states it will continue to account for all cash use, which proposed use is being incurred to preserve property of the bankruptcy estate. The Debtor proposes using cash collateral pursuant to the Interim Budget, subject to the ability to exceed any line item in the Interim Budget by up to 15% of projected expenses.

The Lender's objection contends that the Debtor has no right to use cash or rents to fund post-petition operations or a Chapter 11 plan because its sole source of revenue is the rents and profits from BTC, the Debtor "absolutely" assigned the leases and rents to Lender; and thus, the rents are not property of the estate and cannot constitute cash collateral.

 Questions about what constitutes property of the estate are determined according to state law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Lender contends that the Rent Assignment constitutes an absolute and present assignment of all rents, in part, because it provides that the Debtor "grants, transfers, sets over and assigns to Lender all of the right, title and interest of Assignor in and to:(a) all of the rents, revenues, issues, profits, proceeds, receipts, income, accounts and other receivables" arising from BTC. Rent Assignment, ¶ 2.

Moreover, the Rents Assignment granted the Debtor a revocable license to collect and use the rents until the occurrence of a defined "Event of Default":

Unless or until an Event of Default … shall occur, [Debtor] shall have the right

and is granted a revocable license to collect … all rents, issues, income and profits assigned hereunder, and to retain, use and enjoy the same. Upon the occurrence of an Event of Default, Assignor's right and revocable license to collect such rents, issues, income and profits shall immediately terminate without further notice thereof to Assignor. Assignee shall have the right to notify the tenants under the Leases of the existence of this Assignment at any time.

Rent Assignment, ¶ 5. BOA states that the Debtor's failure to repay the loan is a defined Event of Default under the terms of the Rent Assignment which terminated the Debtor's right to collect and use the BTC rents. Rents Assignment, ¶ 6.

Based on these provisions of the Rents Assignment, Lender cites several cases in support of the proposition that when a Debtor's rents are subject to an absolute assignment, the Debtor has no interest in the rents and they cannot be used as cash collateral. Among the cases cited is *In re Kingsport Ventures, L.P.*, 251 B.R. 841 (Bankr.E.D.Tenn.2000), in which the court held that a pre-petition absolute assignment divested the debtor of all ownership interest in hotel rents, even though Tennessee law presumes that an assignment of rents is a pledge of rents as security. In so holding, the court quoted from the assignment's "clear and unambiguous [language] that it was 'intended by Assignor that this assignment constitutes a present, absolute and unconditional assignment and not an assignment for additional security only.'" *Id.* at 848.

In another hotel rents case, *In re 5877 Poplar, L.P.*, 268 B.R. 140 (Bankr. W.D.Tenn.2001), the court held that an assignment contained in a deed of trust was not an absolute assignment, notwith-

standing the fact that the terms "absolutely" and "unconditionally" were used. *Id.* at 847. The court recognized the difference between the case before it and *Kingsport Ventures* (a separate assignment rather than one contained in a deed of trust), but also pointed out that language in the *Kingsport Ventures* assignment "eliminated any doubt possibly inferred by the parties by clarifying that the assignment is 'not an assignment for additional security only.' *Kingsport Ventures, L.P.*, 251 B.R. at 848." *Id.* at 148.

The treatment of assignments of rents in different jurisdictions has been discussed in John R. Clemency, *Absolutely Not! The Ability of a Lender to Extinguish a Debtor's Interest in Rents Under an Absolute Assignment*, 13–Oct ABIJ 20 (1994). There the author reviews the various positions that bankruptcy courts have taken, noting that there is often a failure to actually analyze relevant state law, the requirements of *Butner v. United States* notwithstanding. One of the cases cited favorably in the article for its in-depth analysis is *Matter of Willows of Coventry, Ltd. P'ship*, 154 B.R. 959 (Bankr.N.D.Ind. 1993).

*Willows of Coventry* was a turnover proceeding in which the debtor was the owner of an apartment complex. The debtor was declared in default pre-petition by the secured creditor which held a mortgage on the property as well as an assignment of leases and rents. The creditor instituted proceedings to foreclose on its mortgage and sought and obtained an order appointing a receiver. In the bankruptcy proceeding, the creditor contended the rents were not property of the estate, based on the rights it exercised under the assignment of leases and rents.

The court analyzed the terms of the assignment which provided that the debtor/assignor "grants, transfers, assigns and sets over to the Assignee ... the Assignor's entire interest as lessor in and to all ... rents, issues, income, charges, awards, premiums, proceeds, profits and any other sums which may become payable to the Assignor[.]" *Matter of Willows of Coventry, Ltd. P'ship*, 154 B.R. at 961. The assignment further provided that it was made for the purposes of securing "[t]he payment of the principal sum, interest and indebtedness evidenced by a certain First Mortgage Note ..." *Id.*

The *Willows of Coventry* debtor/assignor was given the right to collect the rents as long as there was no default, but upon default the Assignee was entitled to "enter upon and take possession of the Real Estate pursuant to the terms of the Mortgage and have, hold, manage and operate the same ... and, either with or without taking possession of the Real Estate in its own name, demand, sue for or otherwise collect and receive all rents, income and profits[.]" *Id.* at 962. Finally, the assignment provided that "[u]pon payment in full of the principal sum, interest and indebtedness secured hereby, this Assignment shall become void[.]" *Id.*

The court noted that Indiana law offers little in the way of guidance as to the effect of an assignment of rents such as the one before it, but went on to state that "the court should give effect to the substance of a transaction rather than its form." *Id.* at 963. The court discussed the fact that under Indiana law an instrument that purports to be an absolute conveyance, but that operates as a pledge of security, is construed as a mortgage. *Id.* at 963–64. The court reasoned:

When these principles are applied to the agreement between [the secured creditor] and the debtor, it is clear, beyond any doubt or debate, that the assignment of rents was intended to be nothing more than a security device. By its

very terms, that assignment states that it was made for the purpose of securing a contemporaneously executed note. Furthermore, upon full payment of the note, the conveyance would be defeated because the assignment provided that it was to become void. Under these circumstances, nothing more is required to prove that there was no absolute conveyance to [the secured creditor].

. . . .

As matter of Indiana law, the assignment of rents given to [the secured creditor] constituted nothing more than a security device. Its original character was not changed by debtor's subsequent default or [the secured creditor's] exercise of its right to proceed against its security. Even the appointment of a receiver by the state court did not terminate debtor's interest as owner. All that changed was the right to possession. Thus, as of the date of the petition, the rents generated by the apartment complex constituted property of the bankruptcy estate, despite the fact that, under state law, the receiver had the right to possession of both the rents and the underlying real estate.

*Matter of Willows of Coventry, Ltd. P'ship,* 154 B.R. at 964–65.

Kentucky law is in accord. In *Moore v. Williamson's Ex'r,* 192 Ky. 790, 234 S.W. 732 (1921), the court held that an instrument that purported to be a deed of conveyance was actually a mortgage since "on its face it cannot be construed as anything but a security for money, and therefore a mortgage [.]" *Id.* at 734.[2]

The Assignment under consideration here has features in common with the assignment in *Willows of Coventry.* It states that the financing of the BTC project "will be **secured by,** among other things: . . . (vi) this Assignment[.]" Assignment, ¶ C. It further states, in the paragraph entitled "**Grant of Security Interest**" that

Assignor hereby grants, transfers, sets over and assigns to Assignee, all of the right, title and interest of Assignor in and to: (a) all of the rents, revenues, issues, profits, proceeds, receipts, income, accounts and other receivable arising out of or from the land . . . (d) . . . This Assignment is an absolute transfer and assignment of the foregoing agreements **given to secure:**

(a) Payment by Assignor when due of: the bond service charges . . . (ii) any and all other indebtedness and obligations that may be due and owing to Lender by Assignor . . .

(b) Observance and performance by Assignor of the covenants, conditions, agreements, . . . and other liabilities and obligations of Assignor . . . which are evidenced or **secured by** or otherwise provided in the Bonds, this Assignment or any of the other Financing Documents[.]

Assignment, ¶ 2 (emphasis added). Finally, at ¶ 16, entitled "Duration," the Assignment provides in part: "This Assignment shall become null and void at such time as Assignor shall have indefeasibly paid all amounts outstanding under the Bonds, together with all interest accrued thereon . . ." Assignment, ¶ 16.

The similarities between the assignment in *Willows of Coventry,* the Assignment here, and applicable state law are significant and support a finding that the Assign-

---

**2.** The Sixth Circuit has likewise ruled in other contexts that substance must prevail over form in the construction of an instrument or transaction. *See e.g. In re Sorah,* 163 F.3d 397, 401 (6th Cir.1998); *In re Fitzgerald,* 9 F.3d 517, 521 (6th Cir.1993); and *Brown v. United States,* 782 F.2d 559, 563 (6th Cir. 1986).

ment at issue herein is not an absolute assignment, but an assignment meant to provide security for BOA and the Trustee.

■ As an alternative argument, BOA asserts that even if the Assignment is simply an assignment for security, the Debtor's interest in the rents terminated prior to the filing of this case. BOA cites in support of its position *Southern Trust Co. v. First–City Bank & Trust*, 259 Ky. 151, 82 S.W.2d 205 (1935). There the court considered a dispute among competing lienholders, and determined that "where there is a pledge of, or a contract right to, the rents, issues, and profits, the mortgage or lien will be construed to cover those things on hand when they are taken into possession by the mortgagee or receiver." *Id.* at 207. *See also Davis v. Doublin*, 283 Ky. 39, 140 S.W.2d 652 (1940)(lien on rents, issues and profits did not become operative until receiver appointed and steps taken toward asserting lien); *Title Ins. & Trust Co. v. Clark*, 271 Ky. 22, 111 S.W.2d 409 (1937)(mortgage lien was first and superior to any lien or rights general creditors had on account of assignment executed by mortgagor).

In *Green v. Vanston BondHolders Protective Comm. (In re American Fuel & Power Co.)*, 151 F.2d 470 (6th Cir.1945), the Sixth Circuit applied Kentucky law to the question of the validity and effect of a mortgage lien since the property in question was located in Kentucky. The court stated:

> It would appear that in Kentucky, no lien in favor of third parties having come into existence prior to the time the mortgagee sought to subject to the mortgage accrued rents, issues and profits, the mortgage constituted a first lien on the rents, issues and profits accrued or on hand with the mortgagor at the time of the institution of the foreclosure

proceeding and the entry of the order of sequestration . . .

> In Kentucky, it has been declared that the entire tenor and affect of an instrument pledging rents, issues and profits in addition to the real estate mortgaged is that such a pledge is deemed secondary security, with the lien continuing as an inchoate right which will be and must be perfected or consummated by asserting the right by some definite action looking toward possession and subjection. Such definite action must be taken in some lawful manner, which . . . is by asking the court to have a receiver take control for the pledgee's benefit . . .

> The appointment of a receiver does not change title or impose any lien upon the property in possession of the receiver. He (the receiver) is mere custodian of the court, holding and protecting property to await its ultimate disposition by the court . . . No right of priority is ordinarily fixed by such appointment. It cuts off the right to acquire liens, but imposes none by virtue of that step alone.

*Id.* at 481 (Internal quotations and citations omitted).

■ This case and the other Kentucky cases cited by BOA make it clear that a mortgagee's lien on rents pledged in the mortgage is superior to any other lien asserted after the mortgagee takes steps to perfect it. None of these cases, however, conclude that the Debtor's interest in the rents is *terminated* by such perfection. Even more remote is the notion that the mere giving of notice to Debtor's lessees somehow extinguishes all of Debtor's right, title and interest in the rents. While such actions may establish priorities among competing creditors and may deprive a debtor of possession, the rents remain property of the bankruptcy estate. *United States v. Whiting Pools, Inc.*, 462 U.S.

198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). As previously noted, the District Court declined to appoint a receiver in the underlying foreclosure action. BOA failed to disclose any alleged ownership interest in the subject rents in that action. *See* District Court Action (Doc. # 2).

The court is cognizant of, but unpersuaded by the authority cited by Creditors which appear to hold to the contrary. None of the cases cited apply Kentucky law. Attempts to distinguish *Whiting Pools* on a theory that tangible property was at issue therein (as opposed to cash) are unavailing where, as in the instant case, the duration of the assignment (and in fact, the ability of the Creditor to retain the proceeds of any of the pledged collateral) is extinguished upon the Creditor's claim being paid in full. The attempted "levy" is not on a bank account or other fixed sum; but rather on a variable stream of future income. *Contra In re Northwest Commons, Inc.,* 136 B.R. 215 (Bankr. E.D.Mo.1991).

## CONCLUSION

The court is therefore of the opinion that the subject rents are property of the within estate, constitute cash collateral, and are properly the subject of the Debtor's motion. BOA's Objection and the Trustee's Joinder to Objection are **overruled** and this matter is **scheduled for a final cash collateral hearing on *May 25, 2010 at 10:00 a.m. in the U.S. Bankruptcy Courtroom, 35 W. 5th Street, Room 306, Covington, Kentucky.***