# Lake Bluff Orphanage v. Magill's Ex'rs et al.

June 20, 1947.

Rehearing denied September 26, 1947.

K. S. Alcorn, Judge.

Chenault Huguely for appellant.

Nelson D. Rodes for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

On October 12, 1929, Henry P. Magill, then a resident of Oak Park, Illinois, executed and delivered an estate note reading as follows:

"In consideration of my interest in the service being rendered by the Methodist Deaconess Orphanage at Lake Bluff, Illinois, and in consideration of others subscribing to a Fund for Replacement of Buildings, Equipment, Underground Construction and Miscellany, I hereby pledge and will pay to the Methodist Deaconess Orphanage the sum of *Five Thousand Dollars ($5,000.).*

This obligation is undertaken upon the following terms and conditions. *See over.*

1. This pledge shall become due upon the day of the decease of *our niece Mrs. Wm. M. Stodghill and her husband,* and shall be paid within one year thereafter by my Administrator or Executor out of the proceeds of my estate. *(For particulars see back)*

*Henry P. Magill.*"

The italicized words were written with a pen modifying and executing a printed form. The signature was witnessed by two persons. On the back of the note appears the following typewriting:

"Under the wills of Mrs. Magill and myself, which are identical, after certain requests [bequests?] to be immediately paid and discharged, the residue of our estate goes during their lives, to our niece Mrs. William M. Stodghill and/or her husband, William M. Stodghill, of Alhambra, California. Upon their death the remaining estate is to be divided by the State Bank of Chicago, Trustees, equally between certain institutions specifically named in our wills, including the Methodist Orphanage at Lake Bluff.

H. P. M."

Magill retired from business and moved to Dan-

ville where he executed a will, dated May 2, 1940, in which he bequeathed his personal effects to his wife absolutely and the rest of his estate to a trustee for the benefit of his wife for her lifetime. He directed that after her death certain paintings be given to Centre College and the Second Presbyterian Church of Danville, and bequeathed $1,000 each to eleven named individuals. The residue was placed in trust for Elizabeth and William Stodghill until the death of both; then $30,000 was to be distributed among six religious and charitable institutions. Contemplating yet more estate, he directed its distribution to four other charities, including a Methodist home for old people in Chicago. No mention was made of the Orphanage to which the estate note had been given. Unfortunately for all concerned, when the testator died on August 20, 1941, his estate amounted to only $10,000, and his widow contributed $2,000 of her own funds for the payment of funeral expenses, taxes and miscellaneous debts. Mrs. Magill died March 29, 1944. The executor filed suit for advice and called upon the Orphanage to set up its claim. It had changed its name to the Lake Bluff Orphanage, and as such sought judgment on the note.

By concession of the demurrers it was agreed that the estate note was given during a campaign for funds as described in part in the instrument. In that campaign a total of $375,000 in subscriptions were received, of which $325,000 had been paid. In reliance upon these subscriptions and promises, including, as specifically pleaded, this note of H. P. Magill, the Orphanage proceeded with the erection of a building and the purchase of equipment at a cost of $350,000. It had been necessary to borrow $50,000, of which $25,000 remains unpaid. The Orphanage would not have embarked upon this program or made the expenditures or borrowed the money except in reliance upon the note of Magill and other persons and in the belief they would be paid.

The circuit court was of opinion that the instrument contemplated a gift to be paid only out of Magill's residuary estate after the death of his wife and Mr. and Mrs. Stodghill; that since the specific bequests of his last will more than consumed the estate, there is no fund or property out of which the subscription may be paid; therefore, the Orphanage has no legally enforceable

claim. A consistent judgment was rendered from which this appeal is prosecuted.

In Floyd v. Christian Church, Widows & Orphans Home, 296 Ky. 196, 176 S. W. 2d 125, 130, 151 A. L. R. 1230, we considered quite fully the liability on and rights under obligations of this kind. Although held not applicable to the facts of that case, which did not establish a valuable consideration for the instruments sought to be enforced, the court recognized the enforcibility of such charitable subscriptions where there was a valuable consideration for them, or where the facts warranted the application of the doctrine of promissory estoppel. We held the estoppel to apply "where there is an agreement by individuals to subscribe funds for the accomplishment of an enterprise which would not otherwise be undertaken or continued," or "where charities have incurred obligations, expended money or performed undertakings which they would not have otherwise incurred, expended, or performed" even without regard or reference to the subscriptions of other persons.

The facts pleaded in the case at bar clearly make that rule applicable. However, the right to rest its faith and take action upon the promise must be gauged by the terms of the instrument, not as the promisee interpreted them but as they may be judicially construed, coupled with the factor of whether those terms are of a character which the promisor should have reasonably expected would induce action of a definite and substantial character on the part of the promisee. Restatement of the Law of Contracts, Sec. 90, quoted in Floyd v. Christian W. & O. Home, supra.

On the other hand, after acceptance, if a subscription is based upon sufficient consideration, or if the beneficiary has incurred liability and expense in acting upon the faith of the promise, it is irrevocable unless cancellation or change is permitted by the terms of the instrument. 50 Am. Jur., Subscriptions, Secs. 6, 11; Chambers v. Baptist Education Society, 1 B. Mon. 215; Central University v. Walters' Ex'rs, 122 Ky. 65, 90 S. W. 1066. Thus, in Central University v. Cox's Ex'r., 136 Ky. 260, 124 S. W. 299, Cox had executed an estate note or subscription, "to be paid at my death, or at the death of my wife, should she survive me and provided there

is enough of my estate not disposed of to meet this subscription." The note was executed in 1889. Cox made a will in 1891 leaving his entire estate to his wife. She died in 1899, testate, without providing for the payment of the subscription. The court held the obligation valid although it was payable only in the event of an uncertain contingency, and construed the terms of the obligation under the circumstances as intending to make it binding if there was any estate not expended, used or consumed in their lifetime, so that neither Cox nor his wife could avoid the liability by disposing of the estate otherwise.

This instrument is not that kind of promise. The conditions are more definite and limitations are greater. The promise is to pay $5,000 after the death of two persons according to the "particulars" on the reverse side. It is not questioned that the memorandum on the back, executed contemporaneously, is a substantive part of the instrument and controls its obligation as though it had been inserted in the body of it. The question is whether the "particulars" constitute (1) a mere recital informing the promisee as to where the money for payment would come from, or (2) a qualification and limitation of the promise, making payment conditional and subject to the provisions of a will for payment out of a residuary trust estate. Appellant's argument is, in effect, that the writing specifically provides for payment after death of the Stodghills out of the estate, subject only to the terms of a previously executed will, the contents of which are not known; that the amount of those specific bequests cannot be speculated into the contract upon maturity of the promise. It is further argued that the pledge could not be defeated by the promisor making a subsequent will, so the chancellor was not warranted in applying the terms of the 1940 will to vary or destroy the original and fixed obligation. The nature of the contract, its spirit and purpose, must be regarded in the interpretation and application thereof.

It is a reasonable concept that the "particulars" were intended to be informative only, for doubtless in October, 1929, Mr. Magill had ample estate to satisfy all his bequests. On the other hand, it seems more reasonable, if not apparent, that the obligor limited his subscription and absolute promise by providing that it

should be paid out of what was left of his estate after the satisfaction of certain undisclosed specific bequests when the life estates given his niece and her husband had terminated. This conditional promise was accepted by the Orphanage. It is expressly stated to be payable out of a particular fund, namely, the residuary trust estate. The material thing—the heart of the matter and the pivotal point—is the fact that there is priority of specific bequests whatever they might have been or might be. That was the promise. It imported a contingency. The rest of the memorandum, as to a provision in the existing will for its satisfaction, may be regarded as but a recitation of the method and not a condition of payment. It is apparent that the Orphanage did not then know the amount of the "certain" bequests else it would have disclosed it in this record. It is chargeable with knowledge of the law that a person possessing testamentary capacity may change or revoke a will and make a different disposition of his estate. It is reasonable to say that the institution accepted the paper subject to any specific bequests having priority just as it did subject to the life estates given the Stodghills. It was competent, therefore, to show that there were specific bequests in the last will which consumed the entire estate so there was no residuary, hence no life estate for the Stodghills and no remainder for the payment of this obligation. These specific bequests were not unreasonable or disproportionate to the total estate which the testator must have believed he would leave. If it were otherwise, there might be some question of an intent to avoid the subscription wrongfully, which could not be permitted.

It is a rule of general acceptation that where a contract limits payment of an obligation to a particular fund, the existence or sufficiency of that fund is a condition precedent to payment, subject, of course, to the qualification that a dereliction in duty of the promisor in respect thereto cannot be permitted to defeat its creation or sufficiency. Owens v. Curd, 192 Ky. 146, 232 S. W. 639; Fox v. Buckingham, 228 Ky. 176, 14 S. W. 2d 421; Hibbs-Kiefer Hat Co. v. Schneiderhan, 236 Ky. 470, 33 S. W. 2d 304; Odem Realty Co. v. Dyer, 242 Ky. 58, 45 S. W. 2d 838; Davis v. Doublin, 283 Ky. 39, 140 S. W. 2d 652.

We are of opinion that the judgment is correct, that there is no fund with which to satisfy the subscription.

Judgment affirmed.