SINGER ET AL., CO-ADMINISTRATORS *v.* BURCHAM ET AL.

[No. 20,207. Filed May 13, 1966. Rehearing denied June 17, 1966. Transfer denied February 22, 1967.]

*George Gossman, Ralph Hamill, John P. Price* and *Hollo-well, Hamill & Price,* all of Indianapolis, for appellants.

*Thomas H. Branaman* and *Branaman & Markel,* both of Brownstown, for appellees.

PRIME, C. J.—The action below was brought by appellant-plaintiff for specific performance of a contract to reconvey real estate and to gain reformation of the deed of conveyance to constitute a mortgage.

The record indicates that the appellant's decedent, Marshall V. Singer, Sr., had contracted for the sale of his farm to the appellees, and concurrently entered in a contract with appellees whereby the decedent had the right to re-purchase the property within one year's time.

Trial was had by court without jury and resulted in a judgment for appellee-defendants on the amended first and third paragraphs of the complaint—the court having previously sustained a demurrer to the second paragraph. Appellants subsequently filed their motion for new trial alleging that the decision was not supported by sufficient evidence, and was contrary to law. The overruling of said motion was assigned as error by appellants upon bringing this appeal.

The facts appear uncontroverted that on December 3, 1954, Singer, unable to meet obligations created due to two mortgages on his property was approached by the appellee and the following conversation ensued:

> "Marshall, I understand that you want to sell me your farm, providing I pay off a $9,000.00 note or mortgage at the Brownstown Loan & Trust Company, with something like almost $500.00 in interest, plus a $5,000.00 mortgage that Mr. Starr has."

Marshall Singer is purported to have answered:

> "(T)hat is right. But he says I would like to have a right to buy it back within a year's time."

According to facts most favorable to the appellee, there was nothing said about a mortgage at that time.

The deed conveyed was absolute on its face, thus the pertinent portions of the contract involved, as set out below, may be looked to in an attempt to determine the intent of the parties.

"That first party hereby agrees to sell and does sell to said second party, and said second party hereby agrees to purchase and does purchase of said first party, the following-described real estate situated in the County of Jackson in the State of Indiana, to-wit: . . .

". . . at and for the consideration and purchase price of Fifteen thousand one hundred eighty-five dollars ($15,-185.00) and which said consideration and purchase price is to be payable as follows: The full sum of Fifteen thousand one hundred eighty-five dollars ($15,185.00) less the amount unpaid, principal and interest, on the mortgage held by the Brownstown Loan and Trust Company of Brownstown, Indiana, upon said real estate, to be paid within one year from the date of the execution of this contract without interest.

"In addition thereto and as a part of the consideration for this contract said second party shall pay all taxes assessed upon said real estate and which are due and payable in the years 1955 and 1956.

"In addition thereto and as a part of the consideration for this contract said second party agrees to carry insurance on the residence building on said real estate in a sum not less than Thirty-five hundred dollars ($3500.00) indemnifying against loss or damage from fire, lightning or windstorm, and may carry such additional insurance on other buildings on said real estate as he may desire, and it is further expressly agreed between the parties that all losses payable under said insurance on any and all buildings on said real estate shall, unless the parties hereto agree in writing otherwise, be applied first to the unpaid balance of the mortgage held by the Brownstown Loan and Trust Company upon said real estate, and secondly, any excess thereof to be next applied on the purchase price for said real estate under this contract, and third, any excess after such payments shall be retained by said second party.

"It is further expressly agreed between the parties hereto that said second party shall have the full possession of said

real estate from and after the date of this contract, together with the right to all crops, income and increment therefrom during the life of this contract.

"It is further agreed between the parties that upon full compliance by said second party with the terms and conditions of this contract that said first party shall, upon request, execute and deliver to second party their good and sufficient warranty deed conveying said real estate to said second party free and clear of all liens and encumbrances except the unpaid balance of the mortgage held by the Brownstown Loan and Trust Company and current taxes, and in the event of the previous payment of said mortgage to said Brownstown Loan and Trust Company said first party shall deliver to second party Abstract of Title to said above-described real estate.

"It is further expressly agreed between the parties hereto that in the event said second party shall fail to make the payment and perform all other terms, provisions and conditions of this contract, then all right, title and interest of said second party in and to said real estate, and in, to and under this contract shall immediately cease and be determined, and said second party agrees in such event to immediately deliver the full and peaceable possession of said real estate to said first party without any further notice or proceedings whatsoever."

It appears that on December 5, 1955, the appellant had not re-purchased the property and by writing, set out the following one year extension.

"John W. Burcham and Bertha Burcham, his wife, hereby agree to extend the above contract and agreement for another year to Dec. 4th, 1956."

Substantially, the same one year written extension was also given by appellee to appellant on December 5, 1956; December 4, 1957 and December 4, 1958.

In addition, the appellant had introduced cancelled checks which indicate that on November 3, 1955; December 4, 1957; December 4, 1958; December 4, 1959; December 5, 1960 and December 4, 1961, the appellant had paid to appellee checks, each in the amount of $759.25.

The 1955 check was marked in the lower left hand corner with the word "interest." The check written in 1960 was marked "1961 payment," and the check dated December 4, 1961, was marked "interest to 12-4-62." The appellant further introduced checks below to indicate that he paid for insurance, taxes and repairs on the property during this period from the sale to appellee until the filing of the complaint below in 1962.

The only other evidence below which seems pertinent to revealing the conduct of the parties was the testimony of two witnesses called by appellee-defendant. Howard Burcham, son of appellees, testified that in addition to the above stated testimony of appellant and appellee, he was present during a further conversation between appellant and appellee in the fall of 1958. His testimony as to the conversation was:

"My father said, Marshall, I'm gonna renew this contract one more year. We're both getting old, and Mr. Singer said then, Well, I never intend to buy the farm, but he says, you'd still rent it to me."

In addition, one Walter Weidig testified that he was present during a meeting between Singer and Burcham in 1959, at which time the [sic] Singer gave Burcham a check for $759.25 and stated, "here's your rent."

Without turning to the issue of waiver of forfeiture rights, it appears that the strongest argument raised is in favor of construing the deed as a mortgage. It is, of course, the law in this state that whether a deed absolute in form is in fact a mortgage depends upon the intention of the parties at the time of its execution. *Barber* v. *Barber* (1946), 117 Ind. App. 156, 70 N. E. 2d 185.

Many tests have been used by the courts in their attempt to determine this all important issue of intent. The court in *Barber* v. *Barber, supra,* applied a test which we feel to be particularly pertinent to the instant case. That decision stated at page 161:

"There is evidence tending to show a mortgage when the party asserting such facts retains control, possession and use of the property, particularly where no rent was fixed or paid. And where such party makes improvements which a tenant would not likely make. Also where the grantee has not exercised any control or ownership in relation to the property."

The facts of this case clearly fall within the confines of the above test, with the only possible exception that of rent. After conveyance of the deed the appellant remained upon the property as before and continued to farm, use and maintain the premises.

The question of rent requires further attention in view of the payments made by appellant to appellee. It is our opinion that the evidence below regarding the inscriptions on the checks paid to appellee, when coupled with the fact that the amount of each payment equalled five percent of the amount assumed by appellee, was not rebutted by sufficient evidence of competent probative value to allow any other interpretation of the transaction than one of payment of interest.

It appears obvious that the parties at the time of the transaction, had no intention of completing an actual sale. Appellant and appellee were long time friends. Appellants' home and livelihood were within days of being taken from him when appellee volunteered to pay and assume the overdue mortgages. After the transaction there were no changes in the routines of either party. Appellant continued to live upon, operate, maintain and control his farm; and the appellant apparently at no time showed any desire to interfere.

In equity, if a transaction resolves itself into a security, or an offer to pledge land as a security for a debt or liability it is treated as a mortgage without regard to the form it may assume. 20 I.L.E. 56, § 32, *Equitable Mortgages*. It has long been the law that the courts will consider all the circumstances of the transaction and of the facts pertinent to the real nature of the conveyance, and in case of doubt

will construe a writing as a mortgage rather than a conditional sale. *Davis* v. *Stonestreet* (1853), 4 Ind. 101.

Appellee, citing numerous cases which would hold this factual situation to have created a mortgage as security for a pre-existing or concurrently created debt, claims that the instant case should be distinguished since here the appellee-grantee assumed debts owing to a third party by the appellant-grantor; and thus, there is no debtor-creditor relationship between appellant and appellee to be secured.

One of the cases upon which the appellee has attempted to base this argument is *Voss et al.* v. *Eller* (1887), 109 Ind. 260, in which the court said at page 263:

> "A recognized method by which to determine whether a deed, absolute on its face, may nevertheless operate as a mortgage, is to ascertain whether or not at the time of its execution, there was a pre-existing or concurrently created debt by way of loan, owing to the grantee, the subsequent payment of which, in pursuance of a contemporaneous agreement, entitled the grantor, or debtor, to a reconveyance of the estate. An absolute conveyance without any other consideration than that assumed, coupled with an agreement to reconvey, will be regarded as a mortgage.
>
> "Whatever form the transaction may have assumed, if the relation of debtor and creditor, with its reciprocal rights, continues between the contracting parties, or if such relation was then created, by a loan or advance, and if the agreement, whether in the deed or in a separate instrument concurrently executed, is such that the debtor, by merely paying his debt, becomes entitled to insist upon a reconveyance, or to otherwise defeat the estate conveyed, the conveyance will be regarded as a security for such continuing or newly incurred debt."

It seems apparent to us that a thorough reading of these words with an eye to their intent and substance would indicate that the Supreme Court had no intention of precluding a situation such as the instant case. Appellant-grantor owed a debt to a third party, appellee-grantee assumed the debt and took a deed to appellant's property and executed an

instrument agreeing to reconvey to appellant upon appellant's paying back the amount of the debt. The contention that the Voss decision, by its wording, would not include these circumstances would involve a severe misconception of the meaning of this often cited case.

In a much later decision the Supreme Court stated:

"(N)o personal covenant or promise on the part of the grantor to pay the debt is necessary to make it a mortgage." *Kerfoot* v. *Kessener* (1949), 227 Ind. 58, 84 N. E. 2d 190.

When it is necessary to accomplish the ends of justice, in an equitable proceeding, a deed though absolute on its face is held to be a mortgage. *Bach* v. *First Nat'l. Bank* (1935), 99 Ind. App. 590.

We see no alternative but to hold that in view of all the facts surrounding the transaction, the parties involved—whether knowingly or not—contemplated a situation which the law presumes to be an equitable mortgage. To hold otherwise would be contrary to law.

The case is reversed and remanded for new trial.

Carson and Wickens, JJ., concur; Faulconer, J., concurs in result.

NOTE.—Reported in 216 N. E. 2d 532.