**In re REDMAN OIL COMPANY, INC., Debtor.**

**In Joint Administration With**

**In re COSHOCTON PIPE COMPANY, Debtor.**

**Bankruptcy Nos. 2–88–03704, 2–88–03989.**

**EIN Nos. 33–0835635, 31–0891651.**

United States Bankruptcy Court, S.D. Ohio, E.D.

May 19, 1989.

. Raymond P. Cunningham, A. Brian Dengler, Arter & Hadden, Columbus, Ohio, for debtor.

Robert J. Sidman, John K. Keller, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for Jack Saltz, Lawrence and Selma Ruben.

Charles M. Caldwell, Office of the U.S. trustee, Columbus, Ohio, Asst. U.S. trustee.

## OPINION AND ORDER

R. GUY COLE, Bankruptcy Judge.

This matter is before the Court upon the Motion for New Hearing and Motion to Alter or Amend Judgment ("Motion") filed by Redman Oil Company, Inc., the debtor in possession in this Chapter 11 case ("Redman" or "Debtor"). A memorandum opposing Redman's Motion has been filed by Jack Saltz and Lawrence and Selma Ruben ("Saltz/Ruben"). The Court has jurisdic-

tion over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which the Court may hear and determine. 28 U.S.C. § 157(b)(1) and (2)(E).

Redman's Motion requests the Court to alter or amend its Opinion and Order on Motion for Turnover entered on December 21, 1988—*In re Redman Oil Co., Inc.*, 95 B.R. 516 (Bankr.S.D.Ohio 1988) (*"Redman I"*).[1] *Redman I* essentially consisted of two rulings by the Court: (1) that Eagle Mountain Energy Corporation ("EME") is a "custodian" within the meaning of 11 U.S.C. § 101(10); and (2) that Redman failed to prove it had, as of the petition date, a contractual right to operate the Wells which was subject to turnover to the Debtor pursuant to 11 U.S.C. § 543. Based upon these two holdings, the Court denied Redman's turnover motion.

Debtor now seeks alteration or amendment of the *Redman I* decision based upon the grounds enumerated in its Motion and further amplified at the hearing of this matter. The arguments asserted in favor of the Motion include:

(1) Redman retains an equitable right to operate the Wells notwithstanding the prepetition termination of Redman's operating rights by Saltz/Ruben's invocation of the Replacement Provision;

(2) Because the Ohio Power lease (Ex. 2) was purportedly incorporated into various documents (Exs. 3 through 10), whereby working interests in the Wells (including Saltz/Ruben's interests) were assigned, the Assignment Clause therein modified or nullified the "at will" termination rights granted Saltz/Ruben by the Replacement Provision;

(3) In determining the effect of the Replacement Provision, the Court failed to consider the impact of the operating agreement executed by and between Redman and Manitou Explora-

tion and various participation agreements to which Redman, A. D. White and Peter Edwards were parties;

(4) The issue of the enforceability of the Replacement Provision was not fully and finally litigated in state court prior to the commencement of the bankruptcy proceeding; and

(5) The Court's "holding" that Redman does not have the exclusive right to market gas produced from the Wells is overly expansive.

Debtor's Motion also seeks a new hearing to address related issues left unresolved by *Redman I*, including:

(1) Whether Redman retains an equitable right to market the gas produced from the Wells;

(2) Whether EME's right to operate the Wells includes a right to exercise dominion and control over tangible physical property owned by Redman and located at the Well sites;

(3) The reporting requirements which should be imposed upon EME if it is permitted to use Redman's tangible physical property at the Well sites;

(4) Whether the Debtor may operate the Wells on behalf of other interest-holders who were not subject to the Operating Agreements between Redman and Saltz/Ruben (such as Manitou Exploration); and

(5) Whether Redman is entitled to take the gas attributable to its working interest in the Wells "in kind" and market the gas independently.

The Court will consider below the various arguments raised by Redman in support of its Motion.

■ A motion to alter or amend a judgment is governed by Federal Rule of Civil Procedure 59(e).[2] With respect to such motions this Court has recently stated:

A Rule 59(e) motion is not intended to provide the parties an opportunity to re-

---

1. The short form references adopted in *Redman I*—such as "Ohio Power", the "Wells", the "Replacement Provision", *etc.*, shall also be used herein.

2. Bankruptcy Rule 9023 makes Rule 59 of the Federal Rules of Civil Procedure applicable to bankruptcy proceedings.

litigate previously-decided matters or to present the case under new theories. Rather, such motions are intended to allow for the correction of manifest errors of fact or law or for the presentation of newly discovered evidence. *Zeveig v. Bethlehem Supply Co.*, 186 F.2d 20 (5th Cir.1951); *Brown v. Wright*, 588 F.2d 708, 710 (9th Cir.1978); *Canister Co. v. National Can Corp.*, 71 F.Supp. 49 (D.Del.1946), *appeal dismissed*, 163 F.2d 683 (3d Cir.1947); *Evans, Inc. v. Tiffany & Co.*, 416 F.Supp. 224, 244 (N.D.Ill. 1976); *Crozier Bros., Inc.*, 60 B.R. [683, 688 (Bankr.S.D.N.Y.1986)]. *See also*, 6A J. Moore, *Moore's Federal Practice* ¶ 59.07 at 59–71 to 59–72 (2d ed. 1987). The burden is on the party seeking reconsideration to demonstrate the existence of manifest errors of fact or law. *Hager v. Paul Revere Life Ins. Co.*, 489 F.Supp. 317, 321 (E.D.Tenn.1977), *aff'd. without opinion*, 615 F.2d 1360 (6th Cir. 1980); *Solar Laboratories v. Cincinnati Advertising Products Co.*, 34 F.Supp. 783 (S.D.Ohio), *appeal dismissed*, 116 F.2d 497 (6th Cir.1940) (motion for reconsideration not to be granted unless the court manifestly misapprehended the law or the facts); *Crozier Bros., Inc.*, 60 B.R. at 688.

*In re Watson*, 102 B.R. 112 (Bankr.S.D.Ohio 1989). Thus, if its Motion is to be granted, Redman must demonstrate either the existence of clear errors of fact or law in *Redman I*, or the discovery of new evidence. Redman has not asserted discovery of new evidence as a ground for relief. Hence, the Court will analyze the arguments raised in Debtor's Motion and determine whether the *Redman I* decision contains manifest errors of fact and/or law and should therefore be altered or amended.

Having reviewed the pleadings filed by Redman and Saltz/Ruben and having heard the arguments of counsel at hearing, the Court finds Redman's Motion to be without merit. As noted in *Redman I*, a crucial threshold element of Debtor's turnover action was the establishment of the existence, as of the petition date, of a legal or equitable property interest subject to turnover. 95 B.R. at 522. After considering the testimonial and documentary evidence adduced at the original hearing, the Court held: "Redman's contractual right to operate the Wells was terminated prior to the filing of the petition." 95 B.R. at 523. The Court is not persuaded that this holding was clearly erroneous.

Redman advances a variety of arguments in an attempt to establish the existence of manifest error on the Court's part. First, Redman asserts that despite the clear language of the Replacement Provision, an equitable right to operate the Wells remained extant and subject to turnover. This contention was not raised at the original hearing and is, therefore, not properly asserted at this juncture of the case. However, even if this argument could now be properly raised, it is devoid of legal or factual support. Equally unavailing is Redman's asseveration that, because Saltz/Ruben's working interests were assigned in documents which purportedly incorporated the Ohio Power lease, the effect of the Replacement Provision was nullified. As the Court stated in *Redman I*, "Redman offered no evidence to establish that the Operating Agreements were subject generally to the provisions of Redman's lease with Ohio Power or to the Assignment Clause in particular." 95 B.R. at 523. And, Redman's argument to the contrary, the documents which affect the assignment of Saltz/Ruben's working interests in the Wells (Exs. 3–10) do not make such assignments subject to the Ohio Power lease. Rather, the Assignments of Working Interests (Exs. 3–10) merely refer to the Ohio Power lease as a means of identifying the specific interests being assigned. Nor is the Court persuaded by Redman's contention that the various participation/operating agreements between Redman and third parties—such as Manitou Exploration—vitiated the effect of the Replacement Provision. Saltz/Ruben were not parties to these agreements and their termination rights under the Operating Agreements were not affected thereby.

In sum, the variety of allegedly conflicting agreements referenced by the Debtor—the Ohio Power lease, Assignments of Working Interests (Exs. 3–10), Participation Agreements (Exs. 15 and 16) and the Manitou Exploration/Redman Operating Agreement (Ex. 14)—were reviewed by the Court in its decision making process. Nothing in these documents suggests the Court's original ruling—that Saltz/Ruben's prepetition invocation of the Replacement Provision extinguished Redman's right to operate the Wells—was manifestly erroneous.

■ Redman's final argument is as follows: Because the state court litigation (which has now been removed to this Court) was not fully and finally adjudicated prior to the filing of this bankruptcy proceeding, it was improper for the Court to determine the efficacy of the Replacement Provision in the context of a turnover proceeding. The logic of this argument escapes the Court. As already noted herein, and as repeatedly stated in *Redman I,* the Court necessarily had to construe the Operating Agreements and various collateral agreements to ascertain whether there was property—an intangible contractual right to operate the Wells—in existence and subject to turnover as of the petition date. Having brought this matter before the Court and received an unfavorable ruling, the Debtor cannot now be heard to complain that the Court's determination was inappropriate because there was not a full and final adjudication in state court.

■ Debtor also challenges the Court's "ruling" that Redman did not have an exclusive right to market gas produced from the Wells, labeling this purported finding overly expansive. However, the Court's statements concerning Redman's alleged exclusive right to market gas must be regarded as mere *dictum.* The issue of whether Redman has an exclusive right to market gas produced from the Wells was not before the Court in the context of Debtor's turnover motion. The Court merely pointed out that to the extent Redman argued its "exclusive" right to market the gas from the Wells conflicted with the Re-

placement Provision and rendered it nugatory, such argument failed of evidentiary support. *Redman I,* 95 B.R. at 523. Thus, *Redman I* did not purport to resolve the issue of whether Debtor possesses an exclusive right to market gas from the Wells, an issue which was neither raised by the turnover motion nor essential to its adjudication.

■ The remaining matters described in Redman's Motion as related issues which should be resolved in the context of a new hearing—*e.g.,* EME's right to use tangible estate property at the Well sites, whether Debtor may operate the Wells on behalf of interest holders other than Saltz/Ruben, Debtor's right to take gas "in kind," *etc.*— were not raised or decided in *Redman I.* If Debtor seeks a determination of these matters, it must either file an appropriate request for relief or await the adjudication of the removed state court action (*Ruben v. Redman Oil Co., Inc., et al.,* Adv. Pro. No. 2–88–0345).

■ Finally, contrary to Redman's contention, *Redman I* and the Court's previous order denying Saltz/Ruben's motion for relief from stay are clearly reconcilable. The Court's original order merely held that Saltz/Ruben failed to establish cause for relief from stay under 11 U.S.C. § 362(d)(1). Put differently, Saltz/Ruben simply had not made a showing of cause under § 362(d)(1) to obtain relief from stay so as to allow the state court action (including EME's administration of the Wells) to continue. *Redman I,* on the other hand, involved a turnover proceeding under 11 U.S.C. § 543. Accordingly, while the relief-from-stay order and *Redman I* involved distinct legal issues and different evidentiary records, the respective rulings are not irreconcilable. Pursuant to *Redman I,* Debtor's operating rights were found to have been extinguished prepetition and, therefore, EME may properly continue operation of the Wells. Saltz/Ruben's earlier failure to displace Redman as operator of the Wells under an entirely different legal theory—relief from stay—is of no consequence.

Based upon the foregoing, Debtor's Motion for New Hearing and Motion to Alter or Amend Judgment is hereby DENIED.

IT IS SO ORDERED.