**In re DON SELLERS VILLAGE LANES, INC. Debtor.**

**Bankruptcy No. 90–9225–8P1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Nov. 14, 1990.

Raymond C. Farfante, Jr., Tampa, Fla., for debtor.

Charles Tatelbaum, Tampa, Fla., for Whitney Management Corp.

## ORDER ON MOTION TO DISMISS OR CONVERT

ALEXANDER L. PASKAY, Chief Judge.

THIS is a Chapter 11 case commenced by filing a Petition for Relief by Don Sellers Village Lanes, Inc. (Debtor) on September 21, 1990. The present matters under consideration are the following: 1) a Motion To Dismiss or Convert filed by Whitney Management Corporation (Whitney Management); 2) a Motion To Compel Payment of Rent, also filed by Whitney Management; 3) a Motion for Extension of Section 365 Time Period filed by the Debtor; and 4) a Motion for Extension of Time within which To Assume or Reject Executory Contract also filed by the Debtor. The Motion To Dismiss or Convert is based on the contention that this Petition was filed in bad faith and, therefore, it is appropriate to dismiss this Chapter 11 case for "cause" pursuant to § 1112(b). At the final evidentiary hearing, the following facts, all of which are basically without dispute and which are relevant to the Motion To Dismiss or Convert have been established:

The Debtor is a Florida corporation and has operated a bowling alley since 1981 in the shopping center owned by Whitney Management. The Debtor is a tenant of the premises under a lease which was the subject of a declaratory suit filed by Whitney Management against the Debtor in the Circuit Court of Pasco County, Florida, Case No. CA 901593, Division G, prior to the commencement of the Chapter 11 case. On June 25, 1990, the Circuit Court for Pasco County entered a declaratory judgment in that suit and held that the lease between the Debtor and Whitney Management was still an outstanding valid lease under which the Debtor was required to pay monthly rent in the amount of $6,759.18, which was determined to be the correct monthly base rental for the entire five years of the extended lease term. The Final Judgment also determined that the Debtor may not remove any of the operating equipment or machinery installed in the premises unless all outstanding obligations under the lease are paid in full. The Circuit Court further found that Whitney Management has a valid lien on all the equipment and machinery located on the premises to secure the Debtor's monetary obligations under the lease.

It appears that in January 1990, the Debtor attempted to sell the entire bowling alley operation and when the sale fell through, decided to cease operations. On the date of the commencement of this Chapter 11 case, the Debtor no longer operated the bowling alley. The Debtor contends that it had to cease operation of the facility because of Whitney Management's failure to maintain the building, specifically the roof which, according to the vice-president of the Debtor, leaks heavily during the rainy season and adversely affects the operation of its business.

The Schedules filed with the Debtor's Petition for Relief under Chapter 11 of the Bankruptcy Code indicate that this Debtor's unsecured obligations are minimal and only involve some unpaid wages which have been outstanding for some 17 months and some insignificant utility bills. It further appears that the bulk of the obligations of the Debtor is owed to insiders. The Debtor has no income and is unable to pay even the service charges due the Office of the United States Trustee. Additionally, the Debtor cannot pay the accruing rent owed to Whitney Management which, pursuant to § 365(d)(3), has to be paid pending assumption or rejection of the lease, unless for cause such performance is temporarily excused. As noted earlier, this is one of the Motions filed by the Debtor which is under consideration.

According to the testimony of the Debtor's vice-president, the viability of the bowling alley operation depends entirely on commitments by bowling leagues to utilize the facilities during the bowling season which commences in September and ends in

May. The operation is always at loss during the summer months. It is without dispute that the Debtor lost all of its commitments for bowling leagues, and it is also without dispute that it is impossible to carry on a viable operation without utilization of the facility by bowling leagues during the bowling season.

It is clear to this Court that the likelihood of obtaining league commitments at this time is almost nonexistent, and the earliest possible time the Debtor might be able to secure commitments for the use of the facilities by leagues is September 1991. The Debtor realizes that its economic future based on the continuing operation of the bowling center is bleak, perhaps even hopeless, to say the least. However, the Debtor proposes an alternative which, according to the Debtor, is viable, and involves the sale of the equipment. According to the vice-president of the Debtor, there is currently a very active market for bowling equipment, inasmuch as bowling is now an Olympic sporting event and developing countries are attempting to raise their facilities to meet the standards of the United States, and these countries are showing a great interest in purchasing equipment to establish good bowling alleys.

These are basically the facts which are relevant and determinative of the merits of the Motion To Dismiss or Convert filed by Whitney Management. This Motion, of course, is directly connected with the Debtor's Motion To Extend the Time To Assume this Lease and with the Motion to Extend Time to Perform under the Lease Pending Assumption of the Lease.

Whitney Management contends that it is apparent that this Debtor is suffering continuing losses and that this Debtor is unable to effectuate a plan of reorganization because there is a total absence of likelihood of the Debtor's ability to achieve rehabilitation under Chapter 11. In support of its position that the Petition was filed in bad faith, Whitney Management also urges that this is a single-asset case; it is basically a two-party dispute; the Debtor is without any funds; the Debtor has no income; and the Debtor does not operate any business. Whitney Management further contends that the only reason the Debtor sought protection in this Court was to attack the state court judgment and to salvage the interest of the insiders, the largest creditors, by the sale of the facility, a prospect of which does not appear to be supported by any hard facts at this time.

In defense of the Motion to Dismiss or Convert, the Debtor contends that the fact that this is a single-asset case is not a ground for dismissal, and that the cause of its difficulties are attributable to Whitney Management. Therefore, the Debtor argues that it should be excused from performing under the lease pending assumption and that it should be given an opportunity to sell the facility, either to someone who operates the bowling facility on the premises, or to someone who wants to remove the bowling equipment, including the lanes, and set up an operation in another location.

■ Courts have been frequently called upon in the past to consider attacks on an otherwise eligible debtor's right to maintain a reorganization case on the basis that it was filed in bad faith. Unlike under the Bankruptcy Act of 1898, a debtor is no longer required to make an initial a showing that the Petition was filed in good faith. Notwithstanding, the courts have developed the doctrine that if it appears that the petition was filed in bad faith, there is "cause" under § 1112(b) either to dismiss or to convert the Chapter 11 case. There are several opinions in the Eleventh Circuit which hold that good faith is an implicit prerequisite to filing a petition for relief under Chapter 11 of the Bankruptcy Code. *See In re Albany Partners, Ltd.*, 749 F.2d 670 (11th Cir.1984); *In re Waldron*, 785 F.2d 936 (11th Cir.1986); *In re Natural Land Corp.*, 825 F.2d 296 (11th Cir.1987).

■ In *In the Matter of Little Creek Development Co.*, 779 F.2d 1068 (5th Cir. 1986), the court listed common factors that appear in cases holding that the Debtor lacks good faith in proceedings under § 1112(b). These factors include:

1) the debtor has one asset, such as a tract of undeveloped or developed real property;

2) the secured creditors' lien encumbers the singular tract;

3) there are generally no employees except for the principals;

4) there are few, if any, unsecured creditors whose claims are relatively small;

5) there is little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make required adequate protection payments;

6) the property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court; and

7) bankruptcy offers the only possibility of forestalling loss of the property.

In this connection, the Court considered several factors, albeit, none of them were considered controlling, and it is clear that the Court is always required to look at the totality of the picture. This Court is satisfied that there still must be a showing that the debtor has a real need and a real ability to effectuate a reorganization, and the fact that this is a single-asset case is only relevant in that context.

Most single-asset cases involve real property which is owned by the debtor. *See, In re North Reddington Beach Associates, Ltd.*, 91 B.R. 166 (Bankr.M.D.Fla.1988). If the only asset owned by the Debtor is income-producing and is sufficient to maintain the operation, and the Debtor has a realistic expectation that the asset will generate sufficient income in the future, the fact this is the Debtor's sole asset is without any great significance. Equally, if it appears that the Debtor has sufficient equity in the single asset which could be used to obtain refinancing or to produce funds through a sale which could fund a plan of reorganization, the fact that it is a single-asset is also without significance. Of course, this is not the case in the present instance. This Debtor owns no real property; instead, it has only a leasehold interest, the covenants of which the Debtor is unable to perform. The Debtor has no ability under the lease to perform, and even if this Court extends the time to perform, the Debtor cannot raise the $18,000 needed to cure the monetary default. The Debtor intimated that it might have a sale in three weeks, but did not present a contract, and this expectation is not supported by any competent, valid evidence. It is still the law that Chapter 11 was not designed to furnish crutches for corporate cripples, and unless there is viable economic core which could be salvaged, the debtor has no business in a Chapter 11 and should be relegated to pursuing its remedies, if it has any, in a nonbankruptcy forum. *In re Breeding Motor Freight Lines, Inc. v. Reconstruction Finance Corp.*, 172 F.2d 416 (10th Cir.1949), *cert. den.*, 338 U.S. 814, 70 S.Ct. 54, 94 L.Ed. 493 (1949). In this connection, it should be noted that the Debtor's attempt to attack the judgment of the Circuit Court in this Court is totally inappropriate, and the Debtor should seek relief from the judgment in the court which entered the judgment, either by a timely filed appeal or motion for rehearing and certainly, it is not a proper goal to reverse the judgment of the Circuit Court through a Chapter 11 case.

In sum, this Court is satisfied this is a classic case where the Debtor totally lacks the requirements of a debtor who should be entitled to use the remedial features of Chapter 11 and, therefore, the Motion To Dismiss is well taken and should be granted.

In light of the foregoing, this Court is equally satisfied it is unnecessary to rule on the Motions filed by the Debtor to extend the time to assume and the Motion to excuse the performance under the lease. Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion To Dismiss or Convert the above-styled Chapter 11 case is granted, and the case is dismissed. It is further

ORDERED, ADJUDGED AND DECREED that the effectiveness of this Order is suspended for ten (10) days to permit

the Debtor to convert the case to one under Chapter 7, if the Debtor so chooses.

DONE AND ORDERED.