## In the Matter of WILLOWS OF COVENTRY, LTD. PARTNERSHIP, Debtor.

**Bankruptcy No: 93–10516.**

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

May 7, 1993.

Daniel J. Skekloff, Scot T. Skekloff, Fort Wayne, IN, for debtor.

Alen Lobley, Dominic Polizzotto, Indianapolis, IN, for Travelers.

## DECISION[1]

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court following the trial of the issues raised by the debtor's motion, filed pursuant to 11 U.S.C. § 543, for turnover from a custodian and Travelers Insurance Company's objection thereto, as well as Travelers' motion to dismiss this case.

Debtor is the owner of an upscale apartment complex in Fort Wayne, Indiana. The property is encumbered by a mortgage in favor of Travelers which secures payment of a debt that, as of the date of the petition, was in excess of $14,000,000.00. Travelers also holds an "assignment of leases and collateral assignment of rents" with regard to this property. Prior to the date of the petition, Travelers declared debtor in default and initiated proceedings to foreclose its mortgage. In doing so, it also requested and received an order appointing a receiver to take possession of the property. On March 31, 1993, debtor filed a voluntary petition for relief under Chapter 11.

Although both motions ultimately turn upon the same issue, the moving party in each bears the burden of proof. Travelers bears the burden of showing cause to dismiss this case under 11 U.S.C. § 1112(b). *In re Klein,* 100 B.R. 1004, 1008 (D.N.D.Ill. 1989); *Matter of Berryhill,* 127 B.R. 427, 430 (Bankr.N.D.Ind.1991). In the turnover proceeding, on the other hand, the moving party bears the burden of proving:

(1) that a custodian has possession, custody or control of property; and

(2) that such property is property of the debtor. *In re Lee,* 126 B.R. 978, 982 (Bankr.S.D.Ohio 1991).

Therefore, the debtor bears the initial burden on these two points. *In re Redman Oil Co.,* 95 B.R. 516, 521 (Bankr.S.D.Ohio 1988), *aff'd on reh'g,* 100 B.R. 945 (Bankr. S.D.Ohio 1989). Once it has presented a

1. This decision supplements the findings of fact and conclusions of law announced orally, following the conclusion of the trial of the issues raised by the matter before the court.

prima facie case, the burden then shifts to Travelers to prove that turnover should be excused under 11 U.S.C. § 543(d). *In re Northgate Terrace Apartments, Ltd.*, 117 B.R. 328, 332 (Bankr.S.D.Ohio 1990).

The parties agree that the resolution of the issues presented by debtor's motion for turnover and Travelers' motion to dismiss turns primarily upon the question of who is entitled to possession of the rents generated by the apartment complex. Travelers contends that those rents do not constitute property of the bankruptcy estate, while the debtor contends they do.[2] Thus, the present matter requires the court to enter the debate, which it has heretofore happily avoided, concerning whether or not rents from leased property constitute property of the bankruptcy estate, where those rents are the subject of an assignment in favor of a lienholder who obtained the appointment of a receiver prior to the date of the petition.

Property of the bankruptcy estate is defined by § 541(a) of the United States Bankruptcy Code. The estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case" wherever located and by whomever held. 11 U.S.C. § 541(a)(1). A determination that the rents in question are not property of the estate requires the court to conclude that the debtor had no legal or equitable interest in those rents as of the date of the petition.

The starting point for any analysis of the competing rights of debtors and creditors is state law. Bankruptcy begins with these state law entitlements and then adjusts them in order to equitably distribute the assets of the estate and provide relief to the debtor.

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.... The justifications

for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918 [59 L.Ed.2d 136] (1979).

Consequently, this court must begin by analyzing the relative rights of the debtor and Travelers as they would otherwise exist under Indiana law and then determine whether federal law has altered those rights.

Travelers bases its argument that the rents are not property of the estate upon the rights it exercised under an "Assignment of Leases and Collateral Assignment of Rents" it received from the debtor on March 24, 1988 and which was recorded with the Allen County Recorder on the next day. Reduced to its essence, this rather lengthy document reads:

> [T]he Assignor [Willows] ... hereby grants, transfers, assigns and sets over to the Assignee [Travelers] the Assignor's entire interest as lessor in and to any existing leases and to all other present and future leases and all other rents, issues, income, charges, awards, premiums, proceeds, profits and any other sums which may become payable to the Assignor as lessor of the real estate located in Allen County....

This Assignment is made for the purposes of securing:

> A. The payment of the principle sum, interest and indebtedness evidenced by a certain First Mortgage Note and any amendments, extensions or renewals thereof, in the original principle sum of Fourteen Million Two Hundred Thousand Dollars ($14,200,000.00), made by the Assignor to the Assignee of even date herewith....

> B. Payment of all other sums, with interest thereon, becoming due and payable to the Assignee under the provisions

---

2. Although debtor contends that the rents in question are property of the bankruptcy estate, it concedes, for the purposes of the present motions, that those rents constitute cash collat-eral, which it may not use without Travelers' consent or the court's authorization and which, pending disposition, must be segregated. *See* 11 U.S.C. § 363(c)(1), (c)(2), (c)(4).

of this Assignment and of the Note and Mortgage.

\* \* \* \* \* \*

This Assignment is made on the following terms, covenants, and conditions:

1. So long as there shall exist no default by the Assignor ... the Assignor shall have the right to collect ... all rents, income and profits arising from the Real Estate, and to retain, use and enjoy the same.

2. At any time permitted by law, and, in any event, upon or at any time after default ... the Assignee ... may, at its option, without notice ... enter upon and take possession of the Real Estate pursuant to the terms of the Mortgage and have, hold, manage, lease and operate the same on such terms and for such period of time as the Assignee may deem proper and, either with or without taking possession of the Real Estate in its own name, demand, sue for or otherwise collect and receive all rents, income and profits of the Real Estate ... and to apply such rents, income and profits to the payment of:

(a) all expenses of managing the Real Estate ... and

(b) the principle sum, interest and indebtedness secured hereby....

\* \* \* \* \* \*

4. Upon payment in full of the principal sum, interest and indebtedness secured hereby, this Assignment shall become void.... (Travelers' Exhibit "2").

The debtor defaulted in the performance of its obligation to Travelers under the note and mortgage prior to March 29, 1993. On that date, Travelers initiated proceedings with the Allen Superior Court in order to foreclose its mortgage upon the apartment complex. In doing so, pursuant to the authority granted by the note and mortgage and in accordance with Indiana law, it requested and received, without notice, an order appointing Revel Companies, Inc. as a receiver in order to "take possession of [the apartment complex] manage same and collect the rents therefrom, all until further order of the court." (Travelers' Exhibit "3"). This order also directed the debtor to "surrender possession of and management of the property to the receiver...." *Id.* The appointment became effective the next day, when Travelers posted the bond required by the state court. Debtor's petition for relief under Chapter 11 was filed on March 31, 1993, after the receiver went into possession of the property in question.

Given what transpired prior to the date of the petition, the court is required to determine whether the appointment of a receiver, debtor's default, the assignment of rents, and/or Travelers' exercise of its rights thereunder terminated debtor's interest in the rents and other income generated by the mortgaged property.

■ As a matter of Indiana law, the appointment of a receiver does not effect title to the property over which the receiver is given authority.

> The appointment of a receiver effects no change in the title to the property involved. He does not, as a general rule, take a legal title thereto. He is a mere custodian pending the litigation, and his possession [is] the possession of the court which appoints him. *Polk v. Johnson,* 76 N.E. 634, 635 (Ind.App.1906). *See also Durbin v. Northwestern Scraper Co.,* 36 Ind.App. 123, 73 N.E. 297, 301 (1905), *appeal dismissed,* 165 Ind. 237, 75 N.E. 1 (1905).

The purpose of a receiver is "to preserve the property pending its final disposition." *Johnson v. LaPorte Bank & Trust Co.,* 470 N.E.2d 350, 353 (Ind.App.1984). Thus, the receiver only "holds possession of the property for the benefit of the party or parties ultimately determined to be entitled thereto. His custody is considered to be the custody of the court." *Parfenoff v. Kozlowski,* 218 Ind. 154, 161, 31 N.E.2d 206, 208 (1941).

■ As a result, Travelers' success in securing the appointment of a receiver over the apartment complex did not terminate debtor's ownership of the property or the rents it generated. That appointment did nothing more than deprive debtor of its statutory right to possession of the proper-

ty, *see* I.C. 32–8–11–1; its ownership interest continued. *See Polk*, 76 N.E. at 635.

A separate issue is the effect of the debtor's execution of the assignment of rents in favor of Travelers, especially in light of debtor's default in the performance of its obligation to pay Travelers and Travelers' subsequent exercise of its rights under that assignment as a result of that default. It is, unfortunately, an issue on which Indiana law offers little direct guidance because decisional authority concerning the effect of an assignment of rents, such as the one before the court, or the exercise of a creditor's rights thereunder is almost nonexistent. Nonetheless, there are certain fundamental principles which both the courts and the legislature of Indiana have recognized which would appear to be applicable. Primary among them is the principle that the court should give effect to the substance of a transaction rather than its form. Where personal property and interests therein are concerned, the Indiana Legislature has specifically codified this rule in Article 9 of the U.C.C. *See* I.C. 26–1–9–102 ("I.C. 26–1–9 applies ... [t]o any transaction (regardless of its form) which is intended to create a security interest in personal property...."). Where interests in real property are concerned, the Indiana courts have come to the same conclusion.

■ "There is no principle in equity better settled than that every contract for the security of a debt, by conveyance of real estate, is a mortgage...." *Turpie v. Lowe*, 114 Ind. 37, 15 N.E. 834, 841 (1888). "In equity, if a transaction resolves itself into a security, or an offer to pledge land as a security for a debt or liability it is treated as a mortgage without regard to the form it may assume." *Singer v. Burcham*, 140 Ind.App. 378, 383, 216 N.E.2d 532, 536 (1966).

The form and names of the instruments are not of controlling effect, for the law looks through form to substance and will give effect to the real and dominant intention of the parties when definitely ascertained.... The general rule is that if a conveyance is made as a security for money, in whatever form the conveyance is made, or whatever cover may be used to disguise the transaction and hide its real character from others, as between the parties and as to all persons who have notice that the property is merely held as collateral security, it will be held and treated as a mortgage. *Kerfoot v. Kessener*, 227 Ind. 58, 78–79, 84 N.E.2d 190, 199 (1949) (citations and internal quotations marks omitted).

Thus, Indiana law gives effect to the intention of the parties and is not controlled by the either the form of the transaction or the names given to the instruments used. *Brenneman Mechanical & Electrical, Inc. v. The First Nat'l Bank of Logansport*, 495 N.E.2d 233, 238–39 (Ind.App.1986). "No matter what form the transaction may assume, if it appear that the instrument was executed to secure a subsisting debt, it will be adjudged a mortgage." *Hanlon v. Doherty*, 109 Ind. 37, 9 N.E. 782, 782–83 (1887). This principle is of such importance that, in the case of doubt, the transaction is to be construed as a mortgage. *Kerfoot*, 227 Ind. at 79, 84 N.E.2d at 199; *Singer*, 140 Ind.App. at 383–84, 216 N.E.2d at 536.

■ The question of whether an instrument constitutes a mortgage or an absolute conveyance "depends ... upon the intention of the parties at the time of its execution." *Barber v. Barber*, 117 Ind. App. 156, 160, 70 N.E.2d 185, 187 (1946). While parole or extrinsic evidence is admissible to prove that an apparently absolute conveyance is, in reality, a mortgage, *Brown v. Follette*, 155 Ind. 316, 58 N.E. 197, 199 (1900); *Dorweiler v. Rosebush–Sinks*, 128 Ind.App. 532, 551–53, 148 N.E.2d 570, 580–81 (1958); *Barber*, 117 Ind.App. at 160–61, 70 N.E.2d at 187, if the document or documents memorializing the transaction reveal that a mortgage was intended, parole evidence should not be received to prove otherwise. *Voss v. Eller*, 109 Ind. 260, 10 N.E. 74, 76 (1887).

[S]ome rules of more or less general application are of controlling influence in determining whether a given transaction is of one character or the other. A recognized method by which to determine

whether a deed, absolute on its face, may nevertheless operate as a mortgage, is to ascertain whether or not, at the time of its execution, there was a pre-existing or concurrently created debt, by way of loan, owing to the grantee, the subsequent payment of which, in pursuance of a contemporaneous agreement, entitled the grantor or debtor to a re-conveyance of the estate. An absolute conveyance, without any other consideration than that assumed, coupled with an agreement to reconvey, will be regarded as a mortgage.

Whatever form the transaction may have assumed, if the relation of debtor and creditor, with its reciprocal rights, continues between the contracting parties, or if such relation was there created, by a loan or advance, and if the agreement, whether in the deed or in a separate instrument concurrently executed, is such that the debtor, by merely paying his debts, becomes entitled to insist upon a re-conveyance, or otherwise defeat the estate conveyed, the conveyance will be regarded as a security for such continuing or newly created debt....

A deed, and an agreement in writing executed contemporaneously therewith, having the characteristics above stated, constitute a mortgage by construction of law. Parol evidence will not be received for the purpose of showing that the parties intended that a transaction evidenced by writings of that description should constitute a sale. *Voss*, 10 N.E. at 75–76 (citations omitted). *See also, Singer*, 140 Ind.App. at 383, 216 N.E.2d at 535–36.

There is absolutely no reason this court can identify which would indicate that the Indiana courts would not apply these same fundamental principles to an assignment of rents, in connection with determining whether such an agreement constitutes an absolute conveyance or a lien.

■ When these principles are applied to the agreement between Travelers and the debtor, it is clear, beyond any doubt or debate, that the assignment of rents was intended to be nothing more than a security device. By its very terms, that assignment states that it was made for the purpose of securing a contemporaneously executed note. Furthermore, upon full payment of the note, the conveyance would be defeated because the assignment provided that it was to become void. Under these circumstances, nothing more is required to prove that there was no absolute conveyance to Travelers.[3] Indeed, the contractual provision voiding the assignment upon full payment of the debt due Travelers means that agreement constitutes nothing more than a mortgage as a matter of law. *Voss*, 10 N.E. at 76. See also *Beidleman v. Koch*, 42 Ind.App. 423, 85 N.E. 977, 978 (1908) (where the grantor agrees to reconvey upon payment of the debt "the transaction is conclusively presumed to be a mortgage.") Since the assignment of rents is nothing more than a security device, Travelers "takes merely as a mortgagee, and has no other right or remedy...." *Brown*, 58 N.E. at 199.

The events that took place following the execution of the assignment of rents did not change its original character as a security device. Indiana follows the simple rule that "[o]nce a mortgage, always a mortgage...." *Doyle v. Ringo*, 180 Ind. 348, 102 N.E. 18, 20 (1913).

There is no principle in equity better settled than that every contract for the security of a debt, by the conveyance of real estate, is a mortgage, and all agreements of the parties tending to alter in any subsequent event the original nature of the mortgage, and prevent the equity of redemption is [sic] void. If the conveyance or assignment was a mortgage in the beginning, the right or [sic] redemption is an inseparable incident, and cannot be restrained or clogged by agreement. Though the conveyance be absolute in terms, yet, if the intention appears to make it a redeemable estate,

---

**3.** Other extraneous factors which indicate that this transaction was nothing more than a security device include Willow's indebtedness to Travelers and the payment of interest thereon, debtor's retention of possession and control of the property and Travelers' lack thereof. *See Moore v. Linville*, 170 Ind.App. 429, 434–35, 352 N.E.2d 846, 849–50 (1976).

it will continue so until foreclosure.... *Turpie*, 15 N.E. at 841.

 As a matter of Indiana law, the assignment of rents given to Travelers constituted nothing more than a security device. Its original character was not changed by debtor's subsequent default or Travelers' exercise of its right to proceed against its security. Despite the exercise of those rights, debtor remained the owner of the rents. Even the appointment of the receiver by the state court did not terminate debtor's interest as owner. All that changed was the right to possession. Thus, as of the date of the petition, the rents generated by the apartment complex constituted property of the bankruptcy estate, despite the fact that, under state law, the receiver had the right to possession of both the rents and the underlying real estate.

 As of the date of the petition, the right to possess both the mortgaged property and the income it produced was in the state court receiver, not the debtor. This, however, is only the first part of the analysis required by *Butner*. The court must also determine whether federal law has altered those rights. Fortunately, determining whether 11 U.S.C. § 543 alters the rights of the parties as they would otherwise exist under state law is a question more easily answered than determining what those underlying rights might be. Both the Bankruptcy Code and the Supreme Court have explicitly addressed the issue.

A state court receiver constitutes a custodian. 11 U.S.C. § 101(11). Pursuant to § 543 of the Bankruptcy Code:

(b) A custodian shall—

(1) deliver to the trustee any property of the debtor held by or transferred to such custodian, or proceeds, product, offspring, rents, or profits of such property, that is in such custodian's possession, custody, or control on the date such custodian acquires knowledge of the commencement of the case[.] 11 U.S.C. § 543(b)(1).

The Supreme Court has specifically recognized that this portion of the Bankruptcy Code, in conjunction with § 541, "bring[s] into the estate property in which the debtor did not have a possessory interest at the time the bankruptcy proceedings commenced." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 & n. 10, 103 S.Ct. 2309, 2313 & n. 10, 76 L.Ed.2d 515 (1983).

In *Whiting Pools* the Supreme Court was called upon to decide whether a Chapter 11 debtor could compel the turnover, pursuant to 11 U.S.C. § 542, of property that had been seized by a secured creditor prior to the petition. In answering the question, the Court readily determined that the property in question constituted property of the estate, notwithstanding the prepetition seizure. *Whiting Pools*, 462 U.S. at 202–09, 103 S.Ct. at 2312–15. In concluding that the turnover order was properly granted the Court stated:

As does all bankruptcy law, § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens.... In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor that was not held by the debtor at the commencement of reorganization proceedings. The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession. *Whiting Pools*, 462 U.S. at 207, 103 S.Ct. at 2314–15 (citations omitted).

The Court then concluded:

Section 542(a) simply requires the [creditor] to seek protection of its interest according to the congressionally established bankruptcy procedures, rather than by withholding the seized property from debtor's efforts to reorganize. *Whiting Pools*, 462 U.S. at 212, 103 S.Ct. at 2317.

The Court's comments and conclusions in *Whiting Pools* are equally applicable to the case at hand. Although this court is confronted with turnover from a custodian, pursuant to § 543, rather than § 542, the two cases are functionally identical. The only distinction is that rather than taking possession of the secured property directly, Travelers did so through a state court re-

ceiver. Nonetheless, the rights it obtained are no different from the rights the secured creditor in *Whiting Pools* possessed as a result of its seizure of the property there in question. As a matter of Indiana law, the appointment of a receiver did not terminate the debtor's ownership of the apartment complex or the income it generated; the appointment was only a provisional remedy which brought the property into the custody of the state court pending its final disposition. *See Whiting Pools,* 462 U.S. at 210–11, 103 S.Ct. at 2316–17. Since that disposition had not taken place prior to the petition, the property in question is property of the bankruptcy estate and is subject to turnover, to the debtor-in-possession, pursuant to § 543.

Travelers contends that the Seventh Circuit's decision in *Matter of Century Investment Fund VIII, L.P.,* 937 F.2d 371 (7th Cir.1991) mandates a different result. The court disagrees. To the extent Travelers argues that the Seventh Circuit concluded that a creditor's pre-petition efforts to perfect a lien upon rents and to obtain the appointment of a receiver resulted in the property being excluded from the estate *as a matter of federal bankruptcy law,* that interpretation of the decision cannot withstand scrutiny. Such a construction would place the Seventh Circuit in conflict with the Supreme Court's decision in *Whiting Pools,* something this court doubts the Seventh Circuit intended. To the extent the Seventh Circuit may have held that the property in question was not property of the estate, it did so on the basis of Wisconsin law. If this was its conclusion, this court perceives Wisconsin law to be very different from the Indiana law which governs the matter now before us. More importantly, however, when the *Century Investment* decision is properly understood, in the context of the proceedings which took place before both the Bankruptcy Court and the District Court, this court's decision concerning turnover is entirely consistent with it.

In *Century Investment,* the Seventh Circuit reversed the District Court's decision and remanded the matter "with instructions to reinstate the [order of the Bank-

ruptcy Court]." *Century Investment,* 937 F.2d at 380. The issue in dispute before the courts below was not whether rents from leased property were excluded from the bankruptcy estate but only whether or not those rents were cash collateral. See *In re Century Investment Fund VIII, L.P.,* 155 B.R. 1002, 1003 (Bankr.E.D.Wis. 1989); *In re Century Investment Fund VIII, L.P.,* No. 89–C–380, 1990 U.S.Dist. Lexis 8128, at *5 (D.E.D.Wis. April 26, 1990). Cash collateral is, by definition, property of the estate. 11 U.S.C. § 363(a) (" 'cash collateral' means cash, ... or other cash equivalents ... in which the estate and an entity other than the estate have an interest...."). The Bankruptcy Court determined that the creditor held a perfected lien upon the rents in question. Despite this conclusion, however, it nonetheless allowed the debtor a limited right to use those rents in connection with its efforts at reorganization, subject to the obligation to adequately protect the lienholder. *In re Century Investment Fund, VIII, L.P.,* 155 B.R. at 1008 (Bankr.E.D.Wis.1989). The Bankruptcy Court did not conclude that the rents were excluded from the estate. On appeal, the District Court held that the creditor did not have a lien upon the rents.

First Bank's commencement of a foreclosure action and filing for the appointment of a receiver did not give rise to a perfected security interest in the rents.... Hence, the rents do not constitute cash collateral, and the bankruptcy trustee may determine the best application of the rental proceeds. *Century Investment,* 1990 U.S.Dist.Lexis 8128, at *14.

By reversing the District Court and reinstating the Bankruptcy Court's order, the Seventh Circuit effectively concluded that the rents in question were property of the estate; albeit property encumbered by a lien in favor of the bank and, therefore, cash collateral. This conclusion is precisely the result this court has reached in its analysis of the competing rights of the debtor and Travelers to the rents in issue.

The court's conclusion that the property in the possession of the state court receiver constitutes property of the estate which must, pursuant to § 543(b)(1), be turned over to the debtor-in-possession easily disposes of the remaining issues before the court. The debtor met its burden of proving that the property in question is property of the estate. It thus became Travelers' burden to show why turnover should be excused, pursuant to § 543(d). Other than the erroneous argument that the rents are not property of the bankruptcy estate, no argument has been advanced which would justify excusing the state court receiver from its clearly stated statutory obligation to deliver the property in its possession to the debtor-in-possession. Indeed, given the receiver's candid admission that, if turnover is excused, its loyalties and obligations will run to the state court which appointed it, rather than to this court, the need for turnover is critical. Travelers has failed to carry its burden under § 543(d) of proving that turnover should be excused.

■ Travelers has also failed to carry its burden of proving that this case should be dismissed. In support of its motion, it argues that debtor's petition constitutes a bad faith filing, when measured by the standards articulated by the district court in *Matter of Grieshop*, 63 B.R. 657, 663 (D.N.D.Ind.1986). What Travelers fails to appreciate, however, is that those factors are to be balanced in determining the presence or absence of a debtor's good faith in seeking bankruptcy relief; they are not to be applied mechanically. *See Matter of Elmwood Development Co.*, 964 F.2d 508, 510 (5th Cir.1992); *In re Clause Enterprises of Ft. Myers, Ltd.*, 150 B.R. 476, 478–79 (Bankr.M.D.Fla.1993); *In re Don Sellers Village Lanes, Inc.*, 121 B.R. 649, 652 (Bankr.M.D.Fla.1990); *In re MGN Co., III*, 116 B.R. 654, 658 (Bankr.S.D.Ind.1989); *In re Marion Street Partnership*, 108 B.R. 218, 223 (Bankr.D.Minn.1989); *In re Clinton Centrifuge, Inc.*, 72 B.R. 900, 905 (Bankr.E.D.Pa.1987). Indeed, the mechanical approach which Travelers apparently urges us to follow would automatically doom almost every single asset case, ab initio.

When the *Grieshop* factors are properly applied and balanced, Travelers has failed to carry its burden of proving that this case has been filed in bad faith. Quite to the contrary, when the evidence presented is properly weighed and balanced, it is the court's conclusion that Willows' petition represents a good faith effort to attempt to reorganize its financial affairs, in accordance with the spirit and the purpose of the Bankruptcy Code.

Debtor's motion for turnover will be granted and Travelers' motion to dismiss will be denied. An appropriate order will be entered.